DAMIEN M. SCHIFF, No. 235101
E-mail:  dms@pacificlegal.org
JOSHUA P. THOMPSON, No. 250955
E-mail:  jpt@pacificlegal.org
CHRISTOPHER M. KIESER, No. 298486
E-mail:  cmk@pacificlegal.org
WENCONG FA, No. 301679
E-mail:  wf@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747

HOWARD A. SAGASER, No. 72492
E-mail:  has@sw2law.com
IAN B. WIELAND, No. 285721
E-mail:  ian@sw2law.com
Sagaser, Watkins & Wieland, PC
7550 North Palm Avenue, Suite 100
Fresno, California 93711
Telephone:  (559) 421-7000
Facsimile:  (559) 473-1483

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDAR POINT NURSERY and FOWLER PACKING CO., | No. 1:16-cv-00185-LJO-BAM |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| WILLIAM B. GOULD IV, GENEVIEVE SHIROMA, CATHRYN RIVERA-HERNANDEZ, AND J. ANTONIO BARBOSA, members of the Agricultural Labor Relations Board in their official capacities, | Date:  March 23, 2016 Time:  9:00 a.m. Courtroom 4, 7th Floor Judge Lawrence J. O'Neill |
| Defendants. | |

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................... ii

INTRODUCTION ........................................................... 1

BACKGROUND ............................................................. 2

    A.  History of the Access Regulation ..................................... 2

    B.  The Access Regulation ............................................. 3

    C.  The Access Regulation as Applied to Plaintiffs ........................ 4

STANDARD OF REVIEW ..................................................... 5

ARGUMENT ............................................................... 6

    A.  Plaintiffs Are Likely to Prevail on the Merits .......................... 6

        1.  The Access Regulation Violates the
            Takings Clause of the Fifth Amendment ...................... 6

        2.  Plaintiffs' Takings Claims Are Ripe Under *Williamson County* ........... 8

        3.  Injunctive and Declaratory Relief Are Proper in This Case .............. 10

        4.  The Access Regulation Violates the
            Seizure Clause of the Fourth Amendment ...................... 11

    B.  Plaintiffs Will Suffer Irreparable Harm Without a Preliminary Injunction ...... 12

    C.  The Balance of Equities Tips Definitively in Favor of Plaintiffs .............. 12

    D.  Granting Preliminary Injunctive Relief Is in the Public Interest .............. 13

    E.  At a Minimum, the "Serious Questions" Test Warrants Preliminary Relief ..... 14

    F.  The Bond Should Be Waived or Set at a Nominal Amount .................. 14

CONCLUSION ............................................................. 15

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4   *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) . . . . . . . . . . . .  1, 5, 14

5   *ALRB v. Superior Court (Pandol & Sons)*, 16 Cal. 3d 392 (1976)  . . . . . . . . . . . . . . . . . . . 2-3, 8

6   *Arkansas Game & Fish Comm'n v. United States*, 133 S. Ct. 511 (2012)  . . . . . . . . . . . . . . 6-7

7   *Austin v. City & County of Honolulu*, 840 F.2d 678 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . 9-10

8   *Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . .  14

9   *Bartels v. Biernat*, 405 F. Supp. 1012 (E.D. Wis. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

10  *Brown v. Legal Found. of Wash.*, 538 U.S. 216 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

11  *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159 (3d Cir. 2006) . . . . . . . . . . . . . . .  8

12  *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59 (1978) . . . . . . . . . . . . .  10

13  *Guggenheim v. City of Goleta*, 638 F.3d 1111 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . .  8

14  *Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th Cir. 1986)  . . . . . . . . . . . . . . . . . . . . . . .  9

15  *Kaiser Aetna v. United States*, 444 U.S. 164 (1979)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

16  *Knudsen Corp. v. Nev. State Dairy Comm'n*, 676 F.2d 374 (9th Cir. 1982) . . . . . . . . . . . . .  12

17  *Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

18  *Levin v. City & County of San Francisco*, 71 F. Supp. 3d 1072 (N.D. Cal. 2014) . . . . . . . . .  9

19  *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) . . . . . . . . . . . . . . . 3, 6-8

20  *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12-13

21  *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

22  *Portsmouth Harbor Land & Hotel Co. v. United States*, 260 U.S. 327 (1922) . . . . . . . . . . . .  8

23  *Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . .  11

24  *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500 (D.C. Cir. 1984),
        *vacated on other grounds by* 471 U.S. 1113 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

25  *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

26  *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002) . . . . . . . . . . . . . .  2

27

28  *San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323 (2005) . . . . . . . . . . .  8

P̲ACIFIC L̲EGAL F̲OUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111  FAX (916) 419-7747

**Page**

*Sansotta v. Town of Nags Head*, 724 F.3d 533 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . 10

*Soldal v. Cook County*, 506 U.S. 56 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832 (9th Cir. 2001) . . . . . . 12

*Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*,
    535 U.S. 302 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Transohio Sav. Bank v. Director, Office of Thrift Supervision*,
    967 F.2d 598 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Arizona*, 641 F.3d 339 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Jacobsen*, 466 U.S. 109 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) . . . . . . . . . . . . . . . . 11-12

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Warth v. Seldin*, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835 (9th Cir. 2001) . . . . . . . . . . 9-10

*Williamson County Regional Planning Commission v. Hamilton Bank*,
    473 U.S. 172 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Yee v. City of Escondido*, 503 U.S. 519 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Zepeda v. INS*, 753 F.2d 719 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

**Statutes**

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cal. Lab. Code § 1140, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Regulations**

Cal. Code Regs. tit. 8, § 20216 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    § 20218 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    § 20279 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    § 20286(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    § 20286(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1

**Page**

2   § 20900(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 7

3   § 20900(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4   § 20900(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5   § 20900(e)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6   § 20900(e)(5)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

7   §§ 20201-20202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8   §§ 20219-20220 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9   §§ 20220-20278 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10                                **Miscellaneous**

11  Barros, D. Benjamin, *The Complexities of Judicial Takings*,
          45 U. Rich. L. Rev. 903 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12

13  Tribe, Laurence H., *American Constitutional Law* (2d ed. 1988) . . . . . . . . . . . . . . . . . . . . . . . 7

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**INTRODUCTION**

Plaintiffs are agricultural businesses that want to make productive use of their property. They seek to enjoin a California Agricultural Labor Relations Board regulation that allows union organizers the right to access private property for the purposes of "soliciting support." Cal. Code Regs. tit. 8, § 20900(e). To be clear, "soliciting support" is just a euphemism for what the access regulation actually allows union organizers to do:  go on private property to conduct disruptive protests in furtherance of the union's own agenda. *See* Fahner Decl. ¶ 9; Parnagian Decl. ¶ 7. These disruptions harm California businesses, and threaten fundamental property rights.

The access regulation is not just disruptive to agricultural businesses, it is also unconstitutional.  By allowing union organizers to commandeer Plaintiffs' private property for the union's own purposes, the access regulation violates the Takings Clause of the Fifth Amendment. When the government "physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 535 U.S. 302, 322 (2002).  It failed to do so here.

Indeed, the access regulation's disregard of private property rights is so blatant that it also violates the Fourth Amendment's Seizure Clause.  That Clause protects "an individual's possessory interests in [] property" from "meaningful interference" by the government. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  It matters little whether this interference comes from direct government action or from private persons prompted by government acquiescence. *Id.* Either way, the access regulation violates the Fourth Amendment by depriving Plaintiffs of their fundamental right to exclude strangers from their property. *See Kaiser Aetna v. United States*, 444 U.S. 164, 179-80 (1979).

Plaintiffs are thus likely to prevail on the merits, and — at minimum — have raised "serious questions" about the constitutionality of the access regulation's unjustifiable and significantly adverse treatment of Plaintiffs, their workers, and their property. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  As a result, preliminary injunctive relief is proper, especially in light of the limited scope of the relief requested.  Plaintiffs bring an as-applied challenge, and merely seek to stop union organizers from trespassing and harassing

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

workers on Plaintiffs' own property.  Without an injunction, Plaintiffs would be forced to endure the violation of their constitutional rights — an irreparable injury by definition.  *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).  Similarly, it is " 'always in the public interest to prevent the violation of a party's constitutional rights.' " *Id.* (quoting *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002)).  The Board's interests on the other side are weak.  It "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983).  Accordingly, this Court should grant the motion for a preliminary injunction.

## BACKGROUND

### A.  History of the Access Regulation

California enacted the Agricultural Labor Relations Act (ALRA or the Act), Cal. Lab. Code § 1140, *et seq.*, in 1975 to " 'ensure peace in the agricultural fields' " and " 'bring certainty . . . to a presently unstable and potentially volatile condition in the state.' " *ALRB v. Superior Court (Pandol & Sons)*, 16 Cal. 3d 392, 398 (1976) (citation omitted).  The Act was the product of a carefully crafted "compromise among the various interests." *Id.* at 424 (Clark, J., dissenting) (citation omitted).  As enacted, it did not include any provision mandating access for union organizers.

Nevertheless, the California Agricultural Labor Relations Board immediately promulgated an emergency access regulation, which took effect just one day after the Act took effect. *Id.* at 400 (majority opinion).  Agricultural businesses promptly challenged the regulation in California state court, claiming that the regulation violated the Takings Clause and the Due Process Clause of the Fifth Amendment. *Id.* at 409-11.  Both plaintiffs prevailed at the trial court, which temporarily enjoined the Board from enforcing the access regulation. *Id.* at 401.

In a 4-3 decision, the California Supreme Court vacated the injunction. *Id.* at 421.  The Court believed that since "the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels , . . . the right to exclude from property [must be] required to yield." *Id.* at 406.  As a result, the California Supreme Court deemed it unnecessary to decide whether the particular facts of a union protest violated the

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  property owner's constitutional rights on a case-by-case basis. *Id.* at 409. It instead adopted a

2  blanket rule requiring access in every case, reasoning that the regulation does not impinge upon

3  private property rights because a rational relationship exists between the access regulation and the

4  purposes of the act. *See id.* at 410. By contrast, the dissent saw the regulation as "an unwarranted

5  infringement on constitutionally protected property rights." *Id.* at 421 (Clark, J., dissenting). It

6  concluded that "the appropriate standard for review is one of balancing and not of rational

7  relationship[s]." *Id.* at 430. Subsequent decisions by the Supreme Court of the United States have

8  adopted the dissent's view. In *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419

9  (1982), for instance, the Court noted that "[i]t is a separate question [] whether an otherwise valid

10  regulation so frustrates property rights that compensation must be paid." *Id.* at 425. Yet the

11  California Supreme Court decision in *Pandol & Sons* — as well as the access regulation —

12  remains the law in California.

**B. The Access Regulation**

14       The access regulation implements California Labor Code section 1152, which states that

15  "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations,

16  to bargain collectively through representatives of their own choosing, and to engage in other

17  concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ."

18  The regulation specifies that the Labor Relations Board "will consider the rights of employees . . .

19  to include the right of access by union organizers to the premises of an agricultural employer for

20  the purpose of meeting and talking with employees and soliciting their support . . . ." Cal. Code

21  Regs. tit. 8., § 20900(e).

22       The access regulation also sets out the manner in which agricultural businesses must grant

23  union organizers access to their facilities. Business are required, upon written notice, to allow

24  union protests on their property for up to four 30-day periods each year. *Id.* § 20900(e)(1)-(2).

25  Organizers can enter the property for three hours per day: an hour before work, an hour after work,

26  and an hour during lunch. *Id.* § 20900(e)(3).

27       Any interference with the union organizers' right to access may be the basis for an unfair

28  labor practice under the California Labor Code. *Id.* § 20900(e)(5)(C). Board regulations allow any

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  person to file a charge, with a short statement of facts, against any other person for engaging in
2  such practice. *Id.* §§ 20201-20202.

3          Once a charge is filed, it is difficult to get it dismissed. The regional director of the Labor
4  Relations Board is tasked with investigating whether respondent has in fact committed an unfair
5  labor practice. *Id.* § 20216. But even if the regional director finds that there is no reasonable cause
6  for the charge, the director must still explain the reasons for dismissing the charge in a written
7  notice. *Id.* § 20218. The charging party may then seek review by the Board's general counsel,
8  who is independent of the Board. The general counsel may affirm the dismissal, remand for further
9  fact-finding, or issue a complaint on behalf of the Board. *Id.* §§ 20219-20220.

10         A complaint drags the respondent — in this case, the property owner — into a litigation-
11  like proceeding before an Administrative Law Judge. *See id.* §§ 20220-20278. The Administrative
12  Law Judge determines whether an unfair labor practice has been committed, and may compel
13  "affirmative action by the respondent" to facilitate the policies of the Agricultural Labor Relations
14  Act. *Id.* § 20279. If no party seeks to reverse the Board's decision by filing an exception, the
15  decision is final 20 days after it is served on the parties. *Id.* § 20286(a). If there are exceptions,
16  "the Board shall review the applicable law and the evidence and determine whether the factual
17  findings are supported by a preponderance of the evidence taken." *Id.* § 20286(b).

18  **C.   The Access Regulation as Applied to Plaintiffs**

19         Plaintiffs are California agricultural businesses that employ workers at their on-site
20  production facilities. Fahner Decl. ¶ 4; Parnagian Decl. ¶ 4. Both have been subject to union
21  protests facilitated by the access regulation in the past — and will likely be subject to such protests
22  in the future. Fahner Decl. ¶¶ 11-12; Parnagian Decl. ¶ 9. Cedar Point has a pending labor charge
23  against the union concerning the scope of the access regulation, Fahner Decl. ¶ 13; Fowler was
24  subject to an ALRB charge, which the union inexplicably dismissed just before this lawsuit was
25  filed. Parnagian Decl. ¶ 9. The access regulation thus adversely affects both Plaintiffs in this case.

26         Cedar Point Nursery employs over 400 seasonal workers and about 100 year-round workers
27  at its facility in Dorris, California, near the California-Oregon border. Fahner Decl. ¶¶ 2-4. The
28  nursery raises strawberry plants for producers in California and nationwide. *Id.* ¶ 3. In 2015,

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

union organizers staged disruptive protests on the facilities, just as workers were trying to complete the harvest season. *Id.* ¶ 11. Although union organizers claimed they were protesting working conditions at Cedar Point, several employees told newspapers that they have never joined a union because working conditions have never been a problem. Cedar Point has filed an ALRB charge against the union for violating the access regulation, and believes that the union will respond in kind. *Id.* ¶ 13.

Fowler Packing Company, a California corporation based in Fresno, produces over 5 million boxes of fresh California table grapes and 15 million boxes of citrus every year. Parnagian Decl. ¶ 3. Fowler employs around 1,800 - 2,500 agricultural workers and approximately 500 workers in its packing facilities. Fowler provides its workers with amenities such as an on-site clinic that provides free medical care for workers and their families. *Id.* ¶ 4. In July 2015, union organizers filed a charge against Fowler, alleging that Fowler blocked organizers from accessing its facilities. *Id.* ¶ 8. On the eve of the lawsuit, the charge was withdrawn for unknown reasons. *Id.* ¶ 9.

Plaintiffs strongly object to the access regulation. They bring this as-applied challenge to ask the Court to enjoin the regulation, and vindicate their constitutional rights as specified in the Fourth and Fifth Amendments to the United States Constitution.

## STANDARD OF REVIEW

Under Rule 65 of the Federal Rules of Civil Procedure, a plaintiff is entitled to a preliminary injunction if: (1) "he is likely to succeed on the merits," (2) he "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) an "injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under an alternative formulation, a preliminary injunction should be granted if there are "serious questions going to the merits," "a balance of hardships that tips sharply towards the plaintiff," there is "a likelihood of irreparable injury," and "the injunction is in the public interest." *Wild Rockies*, 632 F.3d at 1135.

///

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**ARGUMENT**

**A.   Plaintiffs Are Likely to Prevail on the Merits**

The access regulation allows union organizers the full use of Plaintiffs' property.  By depriving Plaintiffs of their fundamental property right to exclude, the regulation violates Plaintiffs' Fifth Amendment rights.  The regulation also violates Plaintiffs' Fourth Amendment right to be free from unreasonable seizures by allowing union organizers to interfere with Plaintiffs' property.  Plaintiffs are likely to succeed in their challenge to the access regulation.

**1.   The Access Regulation Violates the Takings Clause of the Fifth Amendment**

The Takings Clause of the Fifth Amendment requires the government to remedy a property owner's loss whenever the government " 'physically takes possession' " of " 'an interest in property.' " *Arkansas Game & Fish Comm'n v. United States*, 133 S. Ct. 511, 518 (2012) (internal quotation omitted).  The Supreme Court has referred to such appropriations of private property as a "per se" physical taking, and explained that such appropriations implicate the Fifth Amendment's "categorical" rule of providing compensation to the property owner.  *Id.*

Since government (or government-authorized) use, disposition, or occupation of the property is all that is required for a Fifth Amendment violation, a physical taking can occur even if the property owner continuously retains title to his property.  The landlord in *Loretto*, for example, challenged a state law requiring him to permit a cable television company to install cable facilities upon his property.  *Loretto*, 458 U.S. at 419.  The Supreme Court held that the law amounted to a physical taking, even though title never passed from the landlord to the television company.  *Id.*  The Court observed that when government takes "possession and control" of private property, it is treated as if it "held full title and ownership" for purposes of the Takings Clause.  *Id.* at 431.

And, as *Loretto* illustrates, the physical taking doctrine does not distinguish between direct governmental occupation of Plaintiffs' property and, as is the case here, government authorization of a third party to occupy Plaintiffs' property.  *Id.* at 432.  In both cases, the Constitution requires the government to compensate the property owner.  *Id.*  "[P]roperty law has long protected an

owner's expectation that he will be relatively undisturbed at least in the possession of his property." *Id.* at 436.  The property owner "suffers a special kind of injury when a *stranger*" — regardless of whether it is the government or the union — "directly invades and occupies the owner's property." *Id.* (emphasis in the original).

This case is a prototypical example of a physical taking.  Here, the access regulation created an easement for union organizers to enter Plaintiffs' property without consent.  The regulation therefore deprives Plaintiffs of their right to exclude, which is "universally held to be a fundamental element of the property right." *Kaiser Aetna*, 444 U.S. at 179-80.  The Supreme Court has repeatedly recognized, in its decisions on physical takings, that the right to exclude is "one of the most essential sticks in the bundle of rights," *id.* at 176, and one of the rights "most treasured" by the property owner.  *Loretto*, 458 U.S. at 435.  The government must remedy a property owner's loss when it deprives the property owner of the right to exclude, regardless whether the government does so by interloping on the property itself or simply allows "government-invited gatecrashers" to do so.  Laurence H. Tribe, *American Constitutional Law* § 9-5 (2d ed. 1988); *see also Loretto*, 485 U.S. at 419 (cable company); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 839 (1987) (beachgoers); *Kaiser Aetna*, 444 U.S. at 164 (the public).

And the government's duty to compensate the property owner is all the same regardless of whether the trespassers remain on the owner's property indefinitely or are "only" authorized to come onto the property for three hours per day.  *Cf.* Cal. Code Regs. tit. 8, § 20900(e).  "[I]f government action would qualify as a taking when permanently continued, temporary actions of the same character may also qualify as a taking." *Arkansas Game & Fish Comm'n*, 133 S. Ct. at 515.  The finite duration of the physical invasion of property may change the specific type of remedy that the government must provide, but it does not discharge the government of its duty to provide a remedy in the first place.  *See id.* at 523.

For similar reasons, the Board cannot avoid its obligation to remedy the intrusion on Plaintiffs' private property simply by recasting Plaintiffs' injury as a tort.  To be sure, Plaintiffs' would sue under trespass, not the Takings Clause, if they were only subject to minor one-off incursions on their property such as travelers passing to and from the street.  *See Loretto*, 458 U.S.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1   at 428-29.  But "while a single act may not be enough, a continuance of them in sufficient number

2   and for a sufficient time may prove [a taking]."  *Portsmouth Harbor Land & Hotel Co. v. United*

3   *States*, 260 U.S. 327, 329-30 (1922).  That is why a challenge to the access regulation, which

4   allows union organizers to intrude on private property three times a day for 120 days per year, is

5   properly formulated as a constitutional challenge under the Takings Clause.

6       **2.**    **Plaintiffs' Takings Claims Are Ripe Under *Williamson County***

7           Because this is a Takings Clause challenge, Plaintiffs anticipate that Defendants will invoke

8   the procedural hurdles of *Williamson County Regional Planning Commission v. Hamilton Bank*,

9   473 U.S. 172, 185 (1985), in attempting to dismiss it on ripeness grounds.  That attempt would

10  lack merit for several reasons.  For starters, ripeness presents a prudential concern, not a

11  jurisdictional bar.  *See Guggenheim v. City of Goleta*, 638 F.3d 1111, 1117-18 (9th Cir. 2010)

12  (en banc).  Therefore, *Williamson County* ripeness requirements are subject to "countervailing

13  considerations."  *Warth v. Seldin*, 422 U.S. 490, 500-01 (1975).  Here, California Supreme Court

14  precedent makes it perfectly clear that a state court will reject Plaintiffs' Fifth Amendment claim.

15  *See Pandol & Sons*, 16 Cal. 3d at 411.  Requiring Plaintiffs to litigate those claims in state court

16  would therefore "create the possibility for judicially condoned manipulation of litigation."

17  *Sansotta v. Town of Nags Head*, 724 F.3d 533, 545 (4th Cir. 2013).

18          Regardless, *Williamson County*'s requirements should not apply at all because Plaintiffs

19  seek declaratory and injunctive relief, not just compensation.  In *Williamson County*, the property

20  owner sought relief "under the Just Compensation Clause" of the Fifth Amendment.  *Williamson*

21  *County*, 473 U.S. at 186.  This is key to the rationale for the state-litigation requirement.  When

22  plaintiffs seek just compensation, the Court has held that the Fifth Amendment violation does not

23  occur until the state courts deny compensation.  *Id.* at 194 n.13.  The state court litigation

24  requirement "only exists due to the 'special nature of the Just Compensation Clause.' "  *County*

25  *Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006) (quoting *Williamson*

26  *County*, 473 U.S. at 195 n.14).  Therefore, takings plaintiffs may seek other remedies — like

27  declaratory and injunctive relief — immediately in federal court.  *See San Remo Hotel, L.P. v. City*

28  *& County of San Francisco*, 545 U.S. 323, 345-46 (2005) (acknowledging that property owners

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  could have brought their facial takings claims, "which by their nature requested relief distinct from

2  the provision of 'just compensation,' directly in federal court"); *Levin v. City & County of*

3  *San Francisco,* 71 F. Supp. 3d 1072, 1079 (N.D. Cal. 2014) ("The ripeness doctrine of *Williamson*

4  *County* . . . does not apply to takings claims that do not seek monetary compensation.").

5      But even if the Court were to apply the prudential ripeness requirements of *Williamson*

6  *County,* Plaintiffs' Fifth Amendment claim fully satisfies those demands.  The *Williamson County*

7  doctrine requires property owners to ensure that the government entity being sued has reached a

8  final decision, and to first litigate their claims in state court.  *See Williamson County,* 473 U.S. at

9  186, 194.  Since Plaintiffs challenge the access regulation as a physical taking of their property,

10  the first *Williamson County* requirement is automatically satisfied.  *See Hall v. City of Santa*

11  *Barbara*, 833 F.2d 1270, 1281 n.28 (9th Cir. 1986), *overruled on other grounds by Yee v. City of*

12  *Escondido*, 503 U.S. 519 (1992).  Where, as here, there has been a physical invasion upon private

13  property, "the taking occurs at once, and nothing the [Board] can do or say after that point will

14  change that fact."  *Id.*

15      And Plaintiffs in this case should not be required to litigate this case in state court.  In light

16  of California Supreme Court's unfavorable decision in *Pandol & Sons*, there is no state law remedy

17  for California property owners, like Plaintiffs here, who are affected by the access regulation.  The

18  *Williamson County* Court recognized an exception to the usual requirement to file an inverse

19  condemnation case in state court when that procedure is "unavailable or inadequate."  *Williamson*

20  *County*, 473 U.S. at 197.

21      A takings plaintiff may proceed directly in federal court "where resorting to state remedies

22  would be futile."  *Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 851 (9th Cir. 2001)

23  (en banc), *aff'd on other grounds by Brown v. Legal Found. of Wash.*, 538 U.S. 216 (2003).  A

24  claim is futile when the highest court of a state has already adversely determined the outcome.  *See*

25  *id.* (applying the futility exception where the justices of the Washington Supreme Court were

26  parties to the action and filed a brief arguing that the takings claim was unripe and should fail on

27  the merits); *Austin v. City & County of Honolulu*, 840 F.2d 678, 681 (9th Cir. 1988) (a state-court

28  claim is futile when "the state courts establish that landowners may not obtain just compensation

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  through an inverse condemnation action under any circumstances"). After all, "[o]nce the state

2  supreme court has made a decision on property ownership . . . it makes little sense to require

3  further, almost certainly futile, proceedings in the state courts." D. Benjamin Barros, *The*

4  *Complexities of Judicial Takings*, 45 U. Rich. L. Rev. 903, 947 (2011). Because any claim

5  Plaintiffs might have in state court is entirely foreclosed by the *Pandol & Sons* decision, state

6  litigation is futile and Plaintiffs may pursue this case in federal court in the first instance.

7  **3.   Injunctive and Declaratory Relief Are Proper in This Case**

8         The Declaratory Judgment Act, 28 U.S.C. § 2201, "allows individuals threatened with a

9  taking to seek a declaration of the constitutionality of the disputed governmental action before

10  potentially uncompensable damages are sustained." *Duke Power Co. v. Carolina Envtl. Study*

11  *Group, Inc.*, 438 U.S. 59, 71 n.15 (1978). Here, because the access regulation allows for periodic

12  and sporadic intrusion onto Plaintiffs' property, money damages is an inadequate remedy. "[T]he

13  gross inadequacy of money damages could justify injunctive relief when money alone would not

14  constitute just compensation." *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1527 (D.C. Cir.

15  1984) (en banc), *vacated on other grounds by* 471 U.S. 1113 (1985). The nature of the access

16  regulation — and the protests that it enables — makes monetary damages both difficult to ascertain

17  and sorely insufficient to remedy Plaintiffs' injuries. *See Wash. Legal Found.*, 271 F.3d at 850

18  (citing *Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 613 (D.C. Cir.

19  1992) ("the district court should accept jurisdiction over takings claims for injunctive relief in the

20  few cases where a Claims Court remedy is so inadequate that the plaintiff would not be justly

21  compensated") (internal quotation marks omitted)).

22         In any case, monetary relief is unavailable for the Plaintiffs here. The Ninth Circuit has

23  held that "the Eleventh Amendment bars reverse condemnation actions brought in federal court

24  against state officials in their official capacities." *Seven Up Pete Venture v. Schweitzer*, 523 F.3d

25  948, 956 (9th Cir. 2008). For that reason, injunctive and declaratory relief are not just the most

26  appropriate remedies, they are the only remedies available to Plaintiffs.

27  ///

28  ///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**4.    The Access Regulation Violates the Seizure
Clause of the Fourth Amendment**

An individual can assert a valid claim under the Seizure Clause of the Fourth Amendment if the individual can show that the government action at issue has led to "some meaningful interference with [the] individual's possessory interests in [] property." *Jacobsen*, 466 U.S. at 113. That Clause applies in a civil cases, *see United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 51-52 (1993), and when the interference is unrelated to a search or a privacy concern. *See Soldal v. Cook County*, 506 U.S. 56, 65-68 (1992). In this case, the access regulation goes beyond mere interference with Plaintiffs' right to exclude others from their property; the regulation effectively terminates that right in its entirety. The access regulation thus violates not just the Fifth Amendment's Takings Clause, but the Fourth Amendment's Seizure Clause as well.

*Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006), is instructive. The property owner in that case owned a home along a popular river. *Id.* at 482. After the City publicized a map showing public access across the property, river-goers began cutting across the property owner's land. *Id.* After the City continued to publicize public access on the owner's land, even after being apprised that the map was erroneous, the Fourth Circuit held that the owner "allege[d] an unreasonable seizure of her property." *Id.* at 483.

There are striking parallels between *Presley* and this case. Neither case involved any sort of direct trespass by government officials themselves. Rather, the unreasonable seizure in both cases occurred "when private individuals trespassed onto [private] land due to the active and knowing encouragement" of the government. *Id.* Moreover, neither case involved around-the-clock occupation of the owner's property. As the *Presley* court observed, sporadic physical occupation could just as easily amount to a cognizable Fourth Amendment claim. *Id.* at 487.

Both *Presley* and this case also involve a takings claim under the Fifth Amendment in addition to the Fourth Amendment seizure claim. As with *Presley*, this case provides "no basis for doling out constitutional protection[]" one at a time. *Soldal*, 506 U.S. at 70. On the contrary, the access regulation imposes "[c]ertain wrongs that affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Id.* As the Supreme

1   Court put it, "the seizure of property implicates two explicit textual sources of constitutional

2   protection, the Fourth Amendment and the Fifth." *James Daniel Good Real Prop.*, 510 U.S. at 50.

3   The same is true here, and Plaintiffs are likely to prevail on both claims.

4   **B.   Plaintiffs Will Suffer Irreparable Harm Without a Preliminary Injunction**

5        "It is well established that the deprivation of constitutional rights unquestionably

6   constitutes irreparable injury." *Melendres*, 695 F.3d at 1002 (quotation marks & citation omitted).

7   Plaintiffs will also suffer other irreparable harms absent injunctive relief:  the loss of goodwill and

8   competitive injury.

9        First, the access regulation will cause Plaintiffs to lose goodwill.  The regulation sends the

10  message that Plaintiffs would treat their own workers poorly if it were not for union interference.

11  Fahner Decl. ¶ 14; Parnagian Decl. ¶ 10.  Indeed, the plain language of the regulation makes

12  interference with the union organizers' right to access Plaintiffs' property an "unfair labor

13  practice."  Cal. Code Regs. tit. 8, § 20900(e)(5)(C).  Plaintiffs — and the workers themselves —

14  vigorously object to the union's allegations of unfair labor practices. Fahner Decl. ¶ 14; Parnagian

15  Decl. ¶ 10.  But just the "threatened loss" of goodwill is undeniably an irreparable harm under

16  Ninth Circuit precedent. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841

17  (9th Cir. 2001).

18       The access regulation also threatens to put Plaintiffs at a competitive disadvantage relative

19  to their unionized competitors.  Today, it is hardly true that unionization brings any benefits to

20  workers.  Yet the access regulation disadvantages businesses that do not unionize by inciting

21  protests on their property.  As then-Judge Kennedy put it for the Ninth Circuit, that injury to

22  Plaintiffs' "ability to compete" is indisputably an irreparable harm. *Knudsen Corp. v. Nev. State*

23  *Dairy Comm'n*, 676 F.2d 374, 378 (9th Cir. 1982).

24  **C.   The Balance of Equities Tips Definitively in Favor of Plaintiffs**

25       The balance of equities plainly tips in favor of Plaintiffs.  As discussed above, Plaintiffs

26  would suffer many injuries if the access regulation were not enjoined during litigation, including

27  the loss of customers, the loss of goodwill, a competitive disadvantage, and deprivation of their

28  constitutional rights under both the Fourth Amendment and the Fifth Amendment.  By contrast,

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111  FAX (916) 419-7747

1   Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice."

2   *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).  Neither the Board, nor its agents, can

3   "reasonably assert that it is harmed in any legally cognizable sense by being enjoined from

4   constitutional violations."  *Zepeda*, 753 F.2d at 727.

5         Plaintiffs' position is even stronger given the limited nature of the proposed injunction.

6   Plaintiffs do not seek to enjoin the entire labor relations code.  Rather, they ask this Court to enjoin

7   only the specific regulation that allows union organizers to conduct disruptive protests on

8   Plaintiffs' private property.

9   **D.   Granting Preliminary Injunctive Relief Is in the Public Interest**

10        "[I]t is always in the public interest to prevent the violation of a party's constitutional

11  rights."  *Melendres*, 695 F.3d at 1002 (quotation marks & citation omitted).  Here, Plaintiffs seek

12  to enjoin a state regulation that violates their federal constitutional rights.  As the Ninth Circuit

13  recently observed, it is "'clear that it would not be equitable or in the public's interest to allow the

14  state . . . to violate the requirements of federal law.'"  *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006,

15  1029 (9th Cir. 2013) (quoting *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011)).

16        Even if the Board could conjure some sort of public interest in access, that interest must

17  give way to private property rights in all except "the rare case where the inaccessibility of

18  employees makes ineffective the reasonable attempts by nonemployees to communicate with them

19  through the usual channels."  *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 537 (1992) (internal

20  quotations omitted).  This is not that rare case.  The agricultural workers here in live their own

21  homes or in regular hotels, *see* Fahner Decl. ¶¶ 5-6; Parnagian Decl. ¶ 5, rather than in "logging

22  camps, mining camps, [] mountain resort hotels," or anything of the sort.  *Lechmere*, 502 U.S. at

23  539-40 (citations omitted).  Any assertion that the workers here are "isolated from the ordinary

24  flow of information" is insulting and incorrect.  *Id.* at 540.  Neither the union nor the Board has

25  ever come anywhere close to meeting the "heavy burden" required to overcome Plaintiffs' weighty

26  interests in fundamental property rights.  *Id.*

27  ///

28  ///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**E.   At a Minimum, the "Serious Questions" Test Warrants Preliminary Relief**

The standard factors for a preliminary injunction — likelihood of success on the merits, irreparable harm, balance of equities, and the public interest — all favor the issuance of a preliminary injunction.  But at a minimum, Plaintiffs have raised "serious questions going to the merits" and shown a "balance of hardships that tips sharply towards" them, a "likelihood of irreparable injury," and that "the injunction is in the public interest." *Wild Rockies*, 632 F.3d at 1135.  The *Wild Rockies* test thus provides an additional ground for preliminary relief.

**F.   The Bond Should Be Waived or Set at a Nominal Amount**

It is well established that this Court has the discretion to waive the bond required by Federal Rule of Civil Procedure 65(c) or set it at a nominal amount.  *See, e.g.*, *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).  This Court should exercise that discretion in this case because the public interest is strong and "any cost to the government, in the event it is found to have been wrongfully enjoined, would be minimal." *Id.*

As explained above, there is little risk of harm here.  Enjoining the enforcement of the access regulation as it is applied against Plaintiffs has no effect on the ability of public persons to use public property.  Rather, it simply prevents unions from conducting disruptive protests on Plaintiffs' private property.   What is more, there is a strong interest in the vindication of constitutional rights.  To require a bond in this case "would have the effect of discouraging suits to remedy more flagrant abuses" of individual rights by government. *Bartels v. Biernat*, 405 F. Supp. 1012, 1019 (E.D. Wis. 1975).  Plaintiffs therefore request that the bond required by Federal Rule of Civil Procedure 65 be waived or set at a nominal amount.

///

///

///

///

///

///

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

The Court should grant Plaintiffs' motion for a preliminary injunction and enjoin the Defendants from enforcing the access regulation against Plaintiffs.

DATED:  February 16, 2016.

Respectfully submitted,

DAMIEN M. SCHIFF
JOSHUA P. THOMPSON
CHRISTOPHER M. KIESER
WENCONG FA
HOWARD A. SAGASER
IAN B. WIELAND

By _____/s/ Joshua P. Thompson_____
JOSHUA P. THOMPSON

Attorneys for Plaintiffs

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747