KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
MARK R. BECKINGTON, State Bar No. 126009
Supervising Deputy Attorney General
R. MATTHEW WISE, State Bar No. 238485
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 323-8549
  Fax:  (916) 324-3385
  E-mail:  Matthew.Wise@doj.ca.gov
*Attorneys for William B. Gould IV, Genevieve*
*Shiroma, Cathryn Rivera-Hernandez, and J. Antonio*
*Barbosa*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CEDAR POINT NURSERY and FOWLER PACKING CO.,**<br><br>Plaintiffs,<br><br>v.<br><br>**WILLIAM B. GOULD IV, GENEVIEVE SHIROMA, CATHRYN RIVERA-HERNANDEZ, AND J. ANTONIO BARBOSA, members of the Agricultural Labor Relations Board in their official capacities,**<br><br>Defendants. | 1:16-cv-00185-LJO-BAM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; REQUEST FOR JUDICIAL NOTICE**<br><br>Date:             March 23, 2016<br>Time:            9:00 a.m.<br>Dept:            Courtroom 4, 7th Floor<br>Judge:          Lawrence O'Neill<br><br>Action Filed:  February 16, 2016 |

1

**TABLE OF CONTENTS**

2

**Page**

3

Introduction ...................................................................................................................... 1

4

Statutory and Regulatory Background .............................................................................. 3

Statement of Facts ............................................................................................................ 4

5

Legal Standard ................................................................................................................. 5

6

Argument .......................................................................................................................... 6

7

    I.     Plaintiffs Are Not Likely to Prevail on the Merits .................................................. 6

8

          A.    The Access Regulation Does Not Violate the Fifth Amendment
               Prohibition Against Illegal Takings ............................................................ 6

9

               1.    Plaintiffs Have Not Provided a Compelling Reason to
                       Revisit the California Supreme Court's 1976 Decision in

10

                       *ALRB v. Superior Court* ................................................................ 6

11

               2.    This Court Should Evaluate the Access Regulation Under
                       the Penn Central Factors, Not Under the Per Se Rule
                       Favored by Plaintiffs .................................................................... 7

12

               3.    The Access Regulation Is Constitutional Under the Penn

13

                       Central Test ................................................................................... 9

          B.    The Access Regulation Does Not Violate the Fourth Amendment

14

               Prohibition Against Unreasonable Seizures ............................................. 10

15

    II.    Plaintiffs Will Not Suffer Irreparable Harm Absent a Preliminary
      Injunction ............................................................................................................ 11

16

          A.    Plaintiffs' Fundamental Constitutional Rights Are Not at Stake ............. 12

          B.    Plaintiffs' Claims That They Will Lose Goodwill or the Ability to

17

               Compete With Other Businesses Are Speculative .................................... 12

18

          C.    Plaintiffs Do Not Face Imminent Harm ................................................... 13

19

    III.   Defendants Will Suffer Substantial Harm if the Preliminary Injunction Is
      Granted ................................................................................................................ 13

20

    IV.   The Public Interest Is Served by the Denial of the Preliminary Injunction ......... 14

21

    V.    Plaintiffs Have Not Met the "Serious Questions" Test ....................................... 15

Conclusion ...................................................................................................................... 15

22

23

24

25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

<u>Page</u>

3

**CASES**

4

5

*Agric. Labor Relations Bd. v. Super. Ct. (Pandol & Sons)*
    16 Cal. 3d 392 (1976) ................................................................... *passim*

6

*Alliance for Wild Rockies v. Cottrell*
7
    632 F.3d 1127 (9th Cir. 2011) .............................................................6, 15

8

*Arkansas Game & Fish Comm'n v. United States*
    133 S. Ct. 511 (2012) .............................................................................8

9

10

*Bud Antle, Inc. v. Barbosa*
    45 F.3d 1261 (9th Cir. 1995) .................................................................3

11

*Caribbean Marine Servs. Co., Inc. v. Baldrige*
12
    844 F.2d 668 (9th Cir. 1988).................................................................13

13

*Eastex Inc. v. NLRB*
    437 U.S. 556 (1978) ...............................................................................2

14

15

*Elrod v. Burns*
    427 U.S. 347 (1976) .............................................................................12

16

*Freedom Holdings, Inc. v. Spitzer*
17
    408 F.3d 112 (2nd Cir. 2005) ...............................................................11

18

*Goldie's Bookstore, Inc. v. Super. Ct.*
    739 F.2d 466 (9th Cir. 1984)................................................................13

19

*Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*
20
    736 F.3d 1239 (9th Cir. 2013)...............................................................13

21

*Horne v. Dept. of Agric.*
22
    135 S. Ct. 2419 (2015) ...........................................................................8

23

*Hroch v. City of Omaha*
    4. F.3d 693 ..........................................................................................11

24

25

*J. R. Norton Co. v. Agric. Labor Relations Bd.*
    26 Cal. 3d 1 (1979) ................................................................................3

26

*Labor Board v. Babcock & Wilcox Co.*
    351 U.S. 105 (1956).............................................................................4, 6
27

28

ii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Loretto v. Teleprompter Manhattan CATV Corp.*
458 U.S. 419 (1982) ...........................................................................6, 7, 8, 9

4

5

*Midgett v. Tri-County Metro. Transp. Dist. of Oregon*
254 F.3d 846 (9th Cir. 2001) ...........................................................................13

6

*NLRB v. Magnavox Co.*
415 U.S. 322 (1974) ...........................................................................2, 14

7

8

*Northeastern Florida Chapter of Ass'n of Gen. Contractors of America v. City of Jacksonville*
896 F.2d 1283 (11th Cir. 1990) ...........................................................................12

9

10

*Pandol & Sons v. Agric. Labor Relations Bd.*
429 U.S. 802 ...........................................................................4, 7

11

12

*Penn Central Transp. Co. v. New York City*
438 U.S. 104 (1978) ........................................................................... *passim*

13

*Presley v. City of Charlottesville*
464 F.3d 480 (4th Cir. 2006) ...........................................................................11

14

15

*PruneYard Shopping Center v. Robins*
447 U.S. 74 (1980) ...........................................................................8

16

17

*Republic Aviation Corporation v. NLRB*
324 U.S. 793 (1945) ...........................................................................6

18

*Soldal v. Cook County*
506 U.S. 56 (1992) ...........................................................................2, 6, 11

19

20

*United States v. Jacobsen*
466 U.S. 109 (1984) ...........................................................................10

21

22

*Vaquería Tres Monjitas, Inc. v. Irizarry*
587 F.3d 464 (1st Cir. 2009) ...........................................................................12

23

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*
473 U.S. 172 (1985) ...........................................................................10

24

25

*Winter v. Natural Resources Defense Council, Inc.*
555 U.S. 7 (2008) ...........................................................................5, 12, 13, 14

26

27

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

29 United States Code
§ 151 .................................................................................................................3
§ 152(3) ............................................................................................................3

Agricultural Labor Relations Act of 1975, California Statutes (1975), Third
Extraordinary Session, c. 1, § 1, p. 4013 ........................................................1

Labor Code
§ 1140 et seq. ....................................................................................................3
§ 1140.2 .............................................................................................................3
§ 1140.4 .............................................................................................................3
§ 1148 .................................................................................................................3
§ 1152 .................................................................................................................3
§ 1153(a) ...........................................................................................................3

**COURT RULES**

Federal Rules of Civil Procedure
Rule 65 ...............................................................................................................5

**OTHER AUTHORITIES**

California Code of Regulations, Title 8
§ 20900 ....................................................................................................9, 11, 13
§ 20900(a) .........................................................................................................3
§ 20900(b) .........................................................................................................4
§ 20900(c) .......................................................................................................4, 7
§ 20900(d) .........................................................................................................4
§ 20900(e) .......................................................................................................3, 9
§ 20900(e)(1)(A) ...............................................................................................9
§ 20900(e)(1)(B) ...............................................................................................9
§ 20900(e)(1)(C) ...............................................................................................9
§ 20900(e)(3)(A) ...............................................................................................9
§ 20900(e)(3)(B) ...............................................................................................10
§ 20900(e)(4)(A) ...............................................................................................10
§ 20900(e)(4)(B) ...............................................................................................10
§ 20900(e)(4)(C) ...............................................................................................10

**INTRODUCTION**

In 1975, the California State Legislature passed the Agricultural Labor Relations Act to "ensure peace in the agricultural fields by guaranteeing justice for all agricultural workers and stability in labor relations." Agricultural Labor Relations Act of 1975, Cal.Stats. 1975, Third Extraordinary Session, c. 1, § 1, p. 4013. To carry out this purpose, the California Agricultural Labor Relations Board promulgated a regulation shortly after the Act's enactment to provide union organizers the right to access the premises of an agricultural employer to meet and solicit the support of employees. Within a year, the California Supreme Court upheld the constitutionality of this regulation. *Agricultural Labor Relations Board v. Superior Court* (*Pandol & Sons*), 16 Cal. 3d 392 (1976), *appeal dismissed*, *Pandol & Sons v. Agric. Labor Relations Bd.*, 429 U.S. 802 (1976).

Four decades later, Plaintiffs Cedar Point Nursery and Fowler Packing Company (Plaintiffs) seek to end-run this settled precedent by asking this Court to enjoin Defendant Board members[1] (Defendants) from enforcing the access regulation. Yet Plaintiffs, whose claims are based on novel interpretations of the Fifth Amendment's Takings Clause and Fourth Amendment's Seizure Clause, are not likely to succeed on the merits. Nor have Plaintiffs shown that, absent a preliminary injunction, they would suffer irreparable harm to warrant the emergency relief they request. It follows that their application for a preliminary injunction must be denied.

Plaintiffs' primary argument for overturning the decades-old access regulation is that it purportedly authorizes illegal *per se* takings in violation of the Fifth Amendment. But Plaintiffs reach this conclusion based on the wrong legal standard. The categorical, *per se* takings analysis favored by Plaintiffs is reserved for physical takings that entirely deprive an owner of property rights. The access regulation here is a regulatory restriction on the use of property, subject to a nuanced balancing of factors such as the character of the government action, the economic impact

---

[1] Defendants are Agricultural Labor Relations Board Chairman William B. Gould IV, members Genevieve Shiroma and Cathryn Rivera-Hernandez, and executive secretary Antonio Barbosa.

1   of the regulation, and the regulation's interference with reasonable investment-backed

2   expectations.  *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).  Balancing

3   the *Penn Central* factors, the access regulation does not violate the Fifth Amendment's Takings

4   Clause.

5         Plaintiffs also claim that the access regulation violates the Fourth Amendment's Seizure

6   Clause, which prohibits "meaningful interference" with an individual's possessory interests in

7   property.  But here, too, Plaintiffs apply an incomplete legal standard, when instead a balancing

8   test is required.  The touchstone of a Fourth Amendment analysis is the reasonableness of the

9   seizure.  Reasonableness depends on a "careful balancing of governmental and private interests."

10  *Soldal v. Cook County*, 506 U.S. 56, 71 (1992).  Plaintiffs fail to consider the governmental

11  interests in protecting the right of agricultural employees to freedom of association, self-

12  organization, and designation of representatives of their own choosing, and instead focus only on

13  the access regulation's restriction of Plaintiffs' right to exclude non-employees from their

14  property.  When both parties' interests are weighed, the access regulation does not violate the

15  Fourth Amendment's Seizure Clause.

16        Thus, Plaintiffs are not likely to prevail on the merits of their claims.  But even if their

17  claims were viable, Plaintiffs cannot show that they would suffer imminent, irreparable harm

18  absent a preliminary injunction.  Plaintiffs' fundamental rights are not at stake; a violation of their

19  property rights is insufficient, in itself, to establish irreparable harm.  And Plaintiffs' claims that

20  enforcement of the access regulation will cause them to lose goodwill and place them at a

21  competitive disadvantage are entirely speculative.

22        Finally, any harm to Plaintiffs must be balanced against the harm of enjoining Defendants

23  from enforcing a regulation that safeguards the rights of agricultural employees.  The right to

24  engage in union activity on employer property is an enduring principle recognized by all levels of

25  the federal and state judiciary on countless occasions.  *See, e.g., NLRB v. Magnavox Co.*, 415

26  U.S. 322, 325 (1974); *accord Eastex Inc. v. NLRB*, 437 U.S. 556, 574 (1978).  The harm to

27  Defendants, as well as the public interest in the regulation's enforcement, further support the

28  denial of Plaintiffs' motion.

2

1    Plaintiffs alternatively propose that the preliminary injunction should be granted because

2    they have raised "serious questions."  But Plaintiffs must also show—and have not shown here—

3    that the balance of the hardships tips sharply in their favor.  Under this "sliding scale" test, as

4    well, the Court should deny Plaintiffs' motion.

5                    **STATUTORY AND REGULATORY BACKGROUND**

6        The Agricultural Labor Relations Act (Act), California Labor Code § 1140 et seq., is

7    modeled after the comprehensive federal labor relations statutes, the National Labor Relations

8    Act and Taft-Hartley Act (NLRA).  *See J. R. Norton Co. v. Agric. Labor Relations Bd.*, 26 Cal. 3d

9    1, 8 (1979).  The Act established the Agricultural Labor Relations Board (ALRB or Board),

10   which possesses authority and responsibilities comparable to those exercised by the National

11   Labor Relations Board (NLRB).  *Id.*  The NLRA, however, expressly excludes "agricultural

12   laborers" from coverage, 29 U.S.C. § 152(3), while the ALRA applies *only* to the agricultural

13   employees excluded from NLRA coverage.  Cal. Labor Code §§ 1140.4, 1148; *see Bud Antle,*

14   *Inc. v. Barbosa*, 45 F.3d 1261, 1264 (9th Cir. 1995).

15       Consistent with the policies of the NLRA, 29 U.S.C. § 151, the ALRA declares that:

16       It is hereby stated to be the policy of the State of California to encourage and protect
         the right of agricultural employees to full freedom of association, self-organization,
17       and designation of representatives of their own choosing, to negotiate the terms and
         conditions of their employment, and to be free from the interference, restraint, or
18       coercion of employers of labor, or their agents, in the designation of such
         representatives or in self-organization or in other concerted activities for the purpose
19       of collective bargaining or other mutual aid or protection.

20   Cal. Labor Code § 1140.2; *J. R. Norton Co.*, 26 Cal. 3d at 8.

21       Shortly after the Act was enacted, the Board adopted an emergency regulation granting

22   farm labor organizers a qualified right of access to the premises of agricultural employers.  Cal.

23   Code Regs. tit. 8, § 20900(e); *see ALRB v. Super. Ct.*, 16 Cal. 3d at 400.  The access regulation

24   affirms that under the Act, agricultural employees have, among other rights, the right to self-

25   organization, to form, join, or assist labor organizations, and to bargain collectively, and that

26   agricultural employers are prohibited from interfering with, restraining, or coercing agricultural

27   employees in the exercise of these rights.  Cal. Code Regs. tit. 8, § 20900(a) (citing Cal. Labor

28   Code §§ 1152, 1153(a).).

                                    3

The access regulation also recognizes that the Supreme Court "has found that organizational rights are not viable in a vacuum"—that when alternative channels of effective communication are not available to a union, these rights must include "a limited right to approach employees on the property of the employer."  Cal. Code Regs. tit. 8, § 20900(b).  Because in the agricultural setting, unions seeking to organize employees do not have available alternative channels of effective communication, the Board adopted an access regulation that "provide[s] clarity and predictability to all parties."  *Id.* at § 20900(c), (d).  Accordingly, the regulation sets forth terms limiting the right of access "in purpose, in time and place, and in the number of organizers permitted to participate; and conduct is forbidden, other than speech, which is 'disruptive of the employer's property or agricultural operations, including injury to crops or machinery.'"  *ALRB v. Super. Ct.*, 16 Cal. 3d at 400 (quoting Cal. Code Regs. tit. 8, § 20900(e)).

Pandol & Sons and other agricultural employers promptly brought claims challenging the regulation based on the Fifth Amendment's Takings Clause and Due Process Clause.  *ALRB v. Super. Ct.*, 16 Cal. 3d at 401, 402.  The California Supreme Court observed that under *Labor Board v. Babcock & Wilcox Co.*, 351 U.S. 105 (1956), "if the circumstances of employment 'place the employees beyond the reach of reasonable union efforts to communicate with them, *the employer must allow the union to approach his employees on his property.*'"  *ALRB v. Super. Ct.*, 16 Cal. 3d at 409 (emphasis in original) (quoting *Babcock & Wilcox*, 351 U.S. at 113).  Holding that the access regulation's "rule of general application transgresses no constitutional command," including the Fifth Amendment's Takings Clause, the Court upheld the regulation.  *ALRB v. Super. Ct.*, 16 Cal. 3d at 411.  Though Pandol & Sons appealed the decision, the United States Supreme Court dismissed the appeal "for want of a substantial federal question."  *Pandol & Sons v. Agric. Labor Relations Bd.*, 429 U.S. 802.

### STATEMENT OF FACTS

Plaintiffs are large agricultural businesses that employ hundreds of non-unionized employees.  Fahner Decl. ¶¶ 4, 8; Parnagian Decl. ¶¶ 4, 6.  They bring this "as-applied" challenge to enjoin Defendants from enforcing the access regulation and to "vindicate their constitutional rights."  Mem. of P. & A. in Supp. of Pls.' Mot. for Prelim. Inj. [Mot.] at 5.

4

1       Plaintiff Cedar Point Nursery, which raises strawberry plants in Dorris, California, employs

2 between 80 and 100 full-time employees and approximately 400 seasonal employees during the

3 harvest season.  Fahner Decl. ¶¶ 2-4.  Cedar Point's owner, Mike Fahner, alleges that in 2015,

4 union organizers from the United Farm Workers of America (UFW) "staged disruptive protests"

5 on Cedar Point's property during the harvest season.  *Id.* at ¶ 11.  Cedar Point has a pending

6 ALRB charge against the union to address the access regulation, and Mr. Fahner speculates that

7 the UFW will file an ALRB charge against Cedar Point "for any dispute related to the access

8 regulation in the future."  *Id.* at ¶ 13.  Mr. Fahner suggests that continued enforcement of the

9 access regulation "will cause Cedar Point to lose goodwill, because the regulations [sic] sends  a

10 message that Cedar Point would treat its workers poorly without union interference." *Id.* at ¶ 14.

11       Plaintiff Fowler Packing Company, a table grape and citrus producer, employs between

12 1,800 and 2,500 workers in its field operations and approximately 500 workers at its production

13 facility in Fresno, California.  Parnagian Decl. ¶ 3-4.  Fowler's owner, Dennis Parnagian, alleges

14 that in July 2015, the UFW filed Unfair Labor Practice charges with the ALRB claiming that

15 Fowler violated the access regulation by denying union organizers access to Fowler's property.

16 *Id.* at ¶ 8.  Though the UFW later withdrew the charges, Mr. Parnagian predicts that the UFW

17 organizers will attempt to access the property and will file fresh ALRB charges in the future.  *Id.*

18 at ¶ 9.  Mr. Parnagian suggests that continued enforcement of the access regulation "will cause

19 Fowler to lose goodwill, because it sends a message that Fowler would treat its workers poorly

20 without union interference."  *Id.* at ¶ 10.

21 **LEGAL STANDARD**

22       A plaintiff seeking a preliminary injunction under Rule 65 of the Federal Rules of Civil

23 Procedure "must establish that he is likely to succeed on the merits, that he is likely to suffer

24 irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

25 and that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council,*

26 *Inc.*, 555 U.S. 7, 20 (2008).  The Ninth Circuit has also considered a variation of this traditional

27 test, allowing preliminary injunctive relief upon a showing that "serious questions going to the

28

5

1  merits [are] raised and the balance of hardships tip[s] sharply in plaintiff's favor." *See Alliance*

2  *for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-1135 (9th Cir. 2011).

3  **ARGUMENT**

4  **I.    PLAINTIFFS ARE NOT LIKELY TO PREVAIL ON THE MERITS**

5      Plaintiffs claim that the access regulation impermissibly allows union organizers the "full

6  use" of Plaintiffs' property.  Mot. at 6.  Not so.  The regulation merely sanctions temporary

7  admission onto the property, restricted by time, place, and manner, for the important

8  governmental purpose of protecting the rights of agricultural employees.  Such access is hardly a

9  permanent governmental occupation that "destroys *each* of [Plaintiffs'] rights" under the Takings

10  Clause to possess, use, and dispose of their property.  *See Loretto v. Teleprompter Manhattan*

11  *CATV Corp.*, 458 U.S. 419, 435 (1982) (emphasis in original).  Nor does it "unceremoniously

12  dispossess[]" Plaintiffs of their property absent a governmental interest, in violation of the

13  Seizure Clause.  *See Soldal*, 506 U.S. at 61, 71.  Because the access regulation is constitutional,

14  Plaintiffs cannot prevail on the merits.

15      **A.    The Access Regulation Does Not Violate the Fifth Amendment Prohibition
         Against Illegal Takings**

16

17      **1.    Plaintiffs Have Not Provided a Compelling Reason to Revisit the
            California Supreme Court's 1976 Decision in *ALRB v. Superior Court***

18      Plaintiffs seek to enjoin Defendants from enforcing an access regulation that has stood for

19  forty years.  Yet Plaintiffs have not provided a persuasive reason to revisit the California Supreme

20  Court's 1976 decision in *ALRB v. Superior Court* upholding the regulation against a Fifth

21  Amendment Takings Clause challenge.

22      In *ALRB v. Superior Court*, the Court relied on two landmark cases that set forth the ground

23  rules for union activity on company property.  16 Cal. 3d at 405.  First, *Republic Aviation*

24  *Corporation v. Board*, 324 U.S. 793 (1945) held that an employer's right to control his property

25  does not permit him to deny access to persons whose presence is necessary to enable employees

26  to exercise their right to self-organization and collective bargaining.  *ALRB v. Super. Ct.*, 16 Cal.

27  3d at 405 (citing *Republic Aviation Corp. v. NLRB*, 324 U.S. at 802 n.8).  Second, *Labor Board v.*

28  *Babcock & Wilcox Co.* required an employer to allow a union to approach employees on his

6

1   property when the circumstances of employment "place the employees beyond the reach of

2   reasonable union efforts to communicate with them." *ALRB v. Super. Ct.*, 16 Cal. 3d at 409

3   (citing *Babcock & Wilcox*, 351 U.S. at 113).

4       With these two principles in mind, the Court upheld the constitutionality of the access

5   regulation under the Takings Clause.  The Court noted the governmental policy in favor of

6   collective bargaining; the Act's purpose is to "ensure peace in the agricultural fields by

7   guaranteeing justice for all agricultural workers and stability in labor relations."  *ALRB v. Super.*

8   *Ct.*, 16 Cal. 3d at 398 (citing Agricultural Labor Relations Act of 1975, Cal.Stats. 1975, Third

9   Extraordinary Session, c. 1, § 1, p. 4013), 403.  The access regulation implements this vision

10  through a rule of general application that allows union access to employees on the employer's

11  property.  *ALRB v. Super. Ct.*, 16 Cal. 3d at 409.  In particular, the regulation recognizes that in

12  the agricultural setting, unions seeking to organize employees do not have available alternative

13  channels of effective communication.  Cal. Code Regs. tit. 8, § 20900(c).  The Court concluded

14  that the regulation, which includes "various limitations in time, place, purpose and manner," is

15  constitutional.  *Id.* at 410, 411.[2]

16      Plaintiffs suggest that subsequent Supreme Court decisions, including *Loretto*, have

17  undercut the holding in *ALRB v. Superior Court*.  Mot. at 3.  Because, as shown below, Plaintiffs

18  misapply the *per se* standard set forth in *Loretto*, they have not provided a compelling reason to

19  reverse course and find an unconstitutional taking here.

20          **2.      This Court Should Evaluate the Access Regulation Under the *Penn***
            **Central* Factors, Not Under the *Per Se* Rule Favored by Plaintiffs**

21

22      Plaintiffs argue that determining whether a government-authorized taking of private

23  property is constitutional is subject to a *per se*, categorical rule.  Mot. at 6 (citing *Arkansas Game*

24  *& Fish Comm'n v. United States*, 133 S. Ct. 511, 518 (2012)).  Yet the Supreme Court has

25  recognized "few invariable rules in this area"—and that "no magic formula enables a court to

26  _____
        [2] As noted above, the Supreme Court dismissed the appeal of this decision because it did
27  not present a substantial federal question.  *Pandol & Sons v. Agric. Labor Relations Bd.*, 429 U.S.
    802.  As Plaintiffs concede, the Court's decision—and the access regulation—remain the law in
28  California.  Mot. at 3.

1   judge, in every case, whether a given government interference with property is a taking."

2   *Arkansas Game & Fish Comm'n*, 133 S. Ct. at 518.

3        The Supreme Court has distinguished between a physical appropriation of property, which

4   gives rise to a *per se* taking, and a regulatory restriction, which requires a factual inquiry to

5   determine whether the constraints on the use of property went "too far."  *Horne v. Dept. of Agric.*,

6   135 S. Ct. 2419, 2427 (2015) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415

7   (1922)).  In *Penn Central Transportation Co. v. New York City*, the Court set forth three factors

8   that may guide the latter inquiry:  (1) the character of the government action, (2) the economic

9   impact of the regulation, and (3) its interference with reasonable investment-backed expectations.

10   *Id.* at 124.

11        For an invasion of property rights to be considered a *per se* taking, the government must not

12   merely "take a single 'strand' from the 'bundle' of property rights:  it chops through the bundle,

13   taking a slice of every strand."  *Loretto*, 458 U.S. 419, 435.  For example, when the government

14   permanently occupies physical property, it "effectively destroys" the owner's rights to possess,

15   use, and dispose of the property.  *Id.*  The property owner loses not only the right to exclude

16   others from his property, but also control of the property's use, the value of the property, and the

17   expectation that he will be relatively undisturbed in the possession of his property.  *Id.* at 435-436.

18        In *Loretto*, the Supreme Court held that the installation of a cable box on the property

19   owner's rooftop was a *per se* taking because it was a government-authorized permanent physical

20   occupation of the property.  *Id.* at 421, 426, 435-438.  The Court contrasted this permanent

21   occupation with the "temporary physical invasion" in *PruneYard Shopping Center v. Robins*, 447

22   U.S. 74 (1980).  In *PruneYard*, the Court held that a state constitutional provision limiting a

23   property owner's right to exclude individuals who were exercising their free speech and petition

24   rights on the property was a permissible regulatory restriction, not an unconstitutional taking.  *Id.*

25   at 83.  Recently, the Court affirmed the distinction between *Loretto* and *PruneYard*, observing

26   that there was no taking in *PruneYard* because "[t]he owner retained the value of the use of the

27   property . . . largely unimpaired, so the regulation did not go 'too far.'"  *Horne*, 135 S. Ct. at 2429.

28

8

Unlike *Loretto*, the access regulation here does not sanction the permanent physical occupation of property. Instead, it is a regulatory restriction that authorizes temporary admission to the employer's property bound by strict time, place, and manner limitations. *See* Cal. Code Regs. tit. 8, § 20900(e). Though the regulation prohibits Plaintiffs from exercising unfettered discretion to exclude labor organizers from their property, Plaintiffs retain control of their property's use, the value of the property, and the expectation that they will be relatively undisturbed in the possession of their property. *See Loretto*, 458 U.S. at 435-436. Because the regulation does not authorize a taking *per se*, the proper standard for evaluating the regulation is the *Penn Central* test, not the categorical rule in *Loretto*.

> **3.** **The Access Regulation Is Constitutional Under the *Penn Central* Test**

Balancing the *Penn Central* factors, the access regulation is a constitutional regulatory restriction. The character of the governmental action is tailored to fulfill the State's policy to "encourage and protect the right of agricultural employees to full freedom of association, self-organization, and designation of representatives of their own choosing." Cal. Code Regs. tit. 8, § 20900 (citing Cal. Labor Code § 1140.2). The right of access includes, among other limitations, the following:

- Access to the employer's property is limited to no more than four thirty-day periods in a calendar year (§ 20900(e)(1)(A))

- The labor organization must file copies of a written notice of intention to take access with the ALRB regional office at the beginning of each thirty-day period (§ 20900(e)(1)(B))

- The right of access terminates five days after the ballot count in an election is completed (§ 20900(e)(1)(C))

- Organizers may enter the employer's property for one hour before the start of work and one hour after the completion of work to meet with employees in areas where they congregate before and after work (§ 20900(e)(3)(A))

9

- Organizers may enter the employer's property for one hour during the working day to meet with employees during their lunch period in locations where they eat lunch (§ 20900(e)(3)(B))

- Access is limited to two organizers for each work crew on the employer's property, with one additional organizer for every fifteen additional workers if there are more than thirty workers in a crew (§ 20900(e)(4)(A))

- Organizers must identify themselves by name and labor organization, and must wear a badge with this information (§ 20900(e)(4)(B))

In addition, the access regulation prohibits "conduct disruptive of the employer's property or agricultural operations."[3]  Cal. Code Regs. tit. 8, § 20900(e)(4)(C).

Besides considering the minimal intrusion authorized by the regulation, this Court must assess the regulation's economic impact and its interference with reasonable investment-backed expectations.  Yet Plaintiffs have not presented any evidence related to these factors, and only vaguely allege that the regulation "threatens to put Plaintiffs at a competitive disadvantage relative to their unionized competitors."  Mot. at 12.  Plaintiffs have not shown, under the *Penn Central* test, that the access regulation violates the Takings Clause; they are not likely to succeed on the merits of their Fifth Amendment claim.

**B.    The Access Regulation Does Not Violate the Fourth Amendment Prohibition Against Unreasonable Seizures**

Nor are Plaintiffs likely to prevail on their claim that the access regulation violates the Fourth Amendment's Seizure Clause.  A "seizure" occurs when "there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen,* 466 U.S. 109, 113 (1984).  Plaintiffs claim that the access regulation not only interferes with Plaintiffs' right to exclude others from their property, but "effectively terminates that right in its entirety."  Mot. at 11.

---

[3] To the extent that Plaintiffs' "as applied" challenge is based on the distinctive facts involved in a dispute before the ALRB, their Takings claim is not ripe—all of the important factors at issue "simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue."  *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191 (1985).

1    Plaintiffs' argument rests largely on the "striking parallels" they see between *Presley v. City*
2    *of Charlottesville*, 464 F.3d 480 (4th Cir. 2006) and this case.  In *Presley*, the government
3    published a map showing that a public trail crossed a portion of the owner's property, causing a
4    steady stream of people to travel across the owner's property.  *Id.* at 482.  Because the "constant
5    physical occupation" by trespassers was a "meaningful interference" with the property owner's
6    possessory interests, the Court held that the property owner had raised a valid seizure claim.  *Id.*
7    at 487.

8    Yet raising a valid claim is just the first step toward proving that a seizure is
9    unconstitutional.  To prevail on their claim, Plaintiffs must also show that the seizure was
10   unreasonable.  *Soldal*, 506 U.S. 56, 71 ("[R]easonableness is still the ultimate standard under the
11   Fourth Amendment, which means that numerous seizures . . . will survive constitutional
12   scrutiny." (citation omitted)).  The reasonableness determination must reflect a "careful balancing
13   of governmental and private interests."  *Id.*; *Hroch v. City of Omaha*, 4. F.3d 693, 697 (city's
14   condemnation order was not an unreasonable seizure in light of the balancing of governmental
15   and private interests).

16   Plaintiffs fail to consider the strong governmental interests at stake here.  In this respect,
17   *Presley* hardly resembles this case—the governmental interest in publishing a trail map for the
18   public is relatively insignificant compared to the State's policy to safeguard the rights of
19   agricultural employees to freedom of association, self-organization, and collective bargaining.
20   Cal. Code Regs. tit. 8, § 20900.  The Court must weigh this important policy against Plaintiffs'
21   interests in excluding non-employees from their property.  Balancing these interests, the access
22   regulation is reasonable, and does not violate the Seizure Clause.  On this basis, Plaintiffs are not
23   likely to succeed on the merits of their Fourth Amendment claim.

24   **II.    PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY
        INJUNCTION**

25
26   Irreparable harm is "the single most important prerequisite for the issuance of a preliminary
     injunction."  *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2nd Cir. 2005).  The mere
27   "possibility" of harm is not enough, because injunctive relief is "an extraordinary remedy that
28

11

1   may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*,

2   555 U.S. 7, 22.  Plaintiffs have not met this burden here.

3       **A.    Plaintiffs' Fundamental Constitutional Rights Are Not at Stake**

4       Plaintiffs' claim of irreparable harm rests almost solely on the theory that the deprivation of

5   their constitutional rights "unquestionably constitutes irreparable injury."  Mot. at 12 (quoting

6   *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  That irreparable harm can be shown

7   based on a violation of constitutional rights originated with the Supreme Court's decision in

8   *Elrod v. Burns*, 427 U.S. 347 (1976), in which First Amendment freedoms were at issue.  *Id.* at

9   373 ("The loss of *First Amendment freedoms*, for even minimal periods of time, unquestionably

10  constitutes irreparable injury." (emphasis added)).  Courts have generally reserved findings of

11  irreparable harm in this context to violations of *fundamental* constitutional rights, such as free

12  speech, association, and privacy.  *Northeastern Florida Chapter of Ass'n of Gen. Contractors of*

13  *America v. City of Jacksonville*, 896 F.2d 1283, 1285-1286 (11th Cir. 1990) (no presumption of

14  irreparable harm when equal protection violations at issue and damage to plaintiff is primarily

15  economic); *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 484-485 (1st Cir. 2009) ("it

16  cannot be said that violations of plaintiffs' rights to due process and equal protection

17  *automatically* result in irreparable harm" (emphasis in original)).  The modest restriction on the

18  use of Plaintiffs' property does not violate their fundamental constitutional rights, and is not

19  irreparable harm.

20      **B.    Plaintiffs' Claims that They Will Lose Goodwill or the Ability to Compete**
        **with Other Businesses Are Speculative**

21      Plaintiffs argue that they have suffered further irreparable harm because the access

22  regulation purportedly causes them to lose goodwill and the ability to compete with other

23  businesses.  Mot. at 12.  In particular, Plaintiffs allege that the regulation "sends the message that

24  Plaintiffs would treat their own workers poorly if it were not for union interference."  *Id.* (citing

25  Fahner Decl. ¶ 14; Parnagian Decl. ¶ 10).  Yet Plaintiffs' claims are entirely speculative,

26  "grounded in platitudes rather than evidence."[4]  *Herb Reed Enters., LLC v. Florida Entm't Mgmt.,*

27  _____

28      [4] Nor (as they acknowledge) are Plaintiffs without a remedy to vindicate their interests—
                                                                                    (continued…)

12

Mem. of P. & A. in Opp'n. to Pls.' Mot. for Prelim. Inj. (1:16-cv-00185-LJO-BAM)

1   *Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013); *Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466,

2   472 (9th Cir. 1984) (lower court's finding that plaintiff would lose goodwill and "untold"

3   customers is speculative injury, not irreparable injury).  Without more, Plaintiffs' naked

4   allegations are insufficient to show irreparable harm.

5   **C.   Plaintiffs Do Not Face Imminent Harm**

6   Plaintiffs have not shown irreparable harm for another reason—the injury they allege is not

7   imminent.  *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)

8   (plaintiff must demonstrate "immediate threatened harm"); *Midgett v. Tri-County Metro. Transp.*

9   *Dist. of Oregon,* 254 F.3d 846, 850-851 (9th Cir. 2001) (federal court will not intervene unless

10   plaintiff presents evidence of immediate, irreparable harm).  Plaintiff Cedar Point merely claims

11   an expectation "that union organizers will return to the property for another try at recruiting

12   employees" at an unspecified time, Fahner Decl. ¶ 12, and "that the union will file an ALRB

13   charge . . . in the future."  *Id.* at ¶ 13.  Plaintiff Fowler similarly claims that though no charges are

14   pending with the ALRB, "union organizers will attempt to access the property again, and [] the

15   union will file fresh ALRB charges against Fowler in the future."  Parnagian Decl. ¶ 10.  The risk

16   of injury in the indefinite future is not irreparable harm.

17   **III.   DEFENDANTS WILL SUFFER SUBSTANTIAL HARM IF THE PRELIMINARY INJUNCTION**
     **IS GRANTED**

18   Having failed to establish even the possibility of irreparable harm, Plaintiffs cannot show

19   that the balance of the hardships tips in their favor.  *See Winter*, 555. U.S. 7, 24.  And while the

20   harm to Plaintiffs of continued enforcement of the access regulation is speculative, the harm of

21   improperly enjoining the Board from enforcing the regulation is real.  The access regulation is the

22   Board's mechanism to implement the State's policy to encourage and protect the rights of

23   agricultural employees to freedom of association, self-organization, and designation of

24   representatives of their own choosing.  Cal. Code Regs. tit. 8, § 20900.  The Board cannot

25   effectively carry out this policy if it is unable to enforce this regulation against the Plaintiffs.

26   _____

27   (…continued)
     and their reputation.  Mot. at 3-4 (citing various provisions in Cal. Code Regs. tit. 8, § 20200 et
     seq. that provide for administrative review).

28

Plaintiffs suggest that the access regulation is unnecessary because "[a]ny assertion that the workers here are 'isolated from the ordinary flow of information' is insulting and incorrect." Mot. at 13 (quoting *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 537 (1992)).  Yet Plaintiffs' contentions diverge from the testimony at the Board's three public hearings in September 2015 on whether the Board should take additional steps to ensure that farmworkers are aware of their rights under the Act.  Request for Judicial Notice [RJN], Ex. A [Board Memorandum, dated November 23, 2015].  Based on the testimony received at the hearings, Board staff concluded that "despite 40 years of outreach efforts by the Board, by unions and by Hispanic community legal, religious, social and cultural groups, today's farmworkers have little to no knowledge about the ALRA/ALRB and the rights and protections this law affords them." *Id.* at 4.  The various alternative communication methods to onsite access—such as agency outreach or communication by email, cell phone, social media, radio, television, or billboard—either have already been tried or are ineffective. *Id.* at 5, 10-19; *c.f. NLRB v. Magnavox Co.*, 415 U.S. at 325 ("The place of work is a place uniquely appropriate for dissemination of views concerning the bargaining representative and the various options open to the employees.").  This is due in large part to a key demographic change in the farmworker population in California—the growing percentage of farmworkers who are monolingual and cannot read or write their indigenous language. *Id.* at 5; RJN, Ex. B [California's Indigenous Farmworkers—Final Report of the Indigenous Farmworker Study (IFS) to the California Endowment, dated January 2010] at 89.

If anything, based on the testimony taken at the Board hearings, greater access to the employer's property is needed now than at the time the Act was enacted.  The balance of the harms favors Defendants, not Plaintiffs.

## IV. THE PUBLIC INTEREST IS SERVED BY THE DENIAL OF THE PRELIMINARY INJUNCTION

In exercising its sound discretion, the court must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. 7, 24.  For the same reasons that Defendants would be harmed by injunctive relief, the public interest is best served by allowing continued enforcement of the access regulation.  Indeed, Plaintiffs have

14

Mem. of P. & A. in Opp'n. to Pls.' Mot. for Prelim. Inj. (1:16-cv-00185-LJO-BAM)

1   offered no persuasive reason to overturn the status quo—a regulation that has been in place for

2   forty years, that was upheld by the California Supreme Court, and that was left untouched by the

3   United States Supreme Court because its implementation did not present a substantial federal

4   question.  The public interest in carrying out the State's policy to safeguard the rights of

5   agricultural employees outweighs Plaintiffs' narrow property interests.

6   **V.    PLAINTIFFS HAVE NOT MET THE "SERIOUS QUESTIONS" TEST**

7        Having failed to meet any of the factors to warrant injunctive relief, Plaintiffs cannot satisfy

8   the alternative "sliding scale" test.  For the reasons discussed in Sections I-IV, *supra*, Plaintiffs

9   have not shown that "serious questions going to the merits [are] raised and the balance of

10  hardships tip[s] sharply in plaintiff's favor."  *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d

11  1127, 1131-1132 (9th Cir. 2011).  On this additional basis, Plaintiffs' motion should be denied.

12                              **CONCLUSION**

13       Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs'

14  motion for a preliminary injunction.

15  Dated:  March 9, 2016                  Respectfully Submitted,

16                                         KAMALA D. HARRIS
                                           Attorney General of California
17                                         MARK R. BECKINGTON
                                           Supervising Deputy Attorney General
18

19                                         */s/ R. Matthew Wise*

20                                         R. MATTHEW WISE
                                           Deputy Attorney General
21                                         *Attorneys for William B. Gould IV,*
                                           *Genevieve Shiroma, Cathryn Rivera-*
22                                         *Hernandez, and J. Antonio Barbosa*

23

24

25

26
    SA2016100631
27  12143361.doc

28

                                      15

# CERTIFICATE OF SERVICE

Case Name:   **Cedar Point Nursery v. William**         No.   **1:16-cv-00185-LJO-BAM**
            **B. Gould IV, et al.**

I hereby certify that on <u>March 9, 2016</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; REQUEST FOR JUDICIAL NOTICE**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>March 9, 2016</u>, at Sacramento, California.

|  |  |
|---|---|
| Tracie L. Campbell | |
| Declarant | Signature |

SA2016100631
12161521.doc