DAMIEN M. SCHIFF, No. 235101
E-mail:  dms@pacificlegal.org
JOSHUA P. THOMPSON, No. 250955
E-mail:  jpt@pacificlegal.org
CHRISTOPHER M. KIESER, No. 298486
E-mail:  cmk@pacificlegal.org
WENCONG FA, No. 301679
E-mail:  wf@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747

HOWARD A. SAGASER, No. 72492
E-mail:  has@sw2law.com
IAN B. WIELAND, No. 285721
E-mail:  ian@sw2law.com
Sagaser, Watkins & Wieland, PC
7550 North Palm Avenue, Suite 100
Fresno, California 93711
Telephone:  (559) 421-7000
Facsimile:  (559) 473-1483

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDAR POINT NURSERY and FOWLER PACKING CO.,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM B. GOULD IV, GENEVIEVE SHIROMA, CATHRYN RIVERA-HERNANDEZ, AND J. ANTONIO BARBOSA, members of the Agricultural Labor Relations Board in their official capacities,<br><br>Defendants. | No. 1:16-cv-00185-LJO-BAM<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: March 23, 2016<br>Time: 9:00 a.m.<br>Courtroom 4, 7th Floor<br>Judge Lawrence J. O'Neill |

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Plaintiffs Are Likely To Succeed on the Merits . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.   The Access Regulation Violates the Fifth Amendment . . . . . . . . . . . . . . . . . . . 2

        2.   The Access Regulation Violates the Fourth Amendment . . . . . . . . . . . . . . . . . 4

    B.   Plaintiffs Will Suffer Irreparable Harm Without a Preliminary Injunction . . . . . . . 6

    C.   Balance of Equities Tips Sharply in Plaintiffs' Favor . . . . . . . . . . . . . . . . . . . . . 6

    D.   Granting Preliminary Injunctive Relief Is in the Public Interest . . . . . . . . . . . . . . 7

    E.   The "Serious Questions" Test Provides an
        Additional Basis for Preliminary Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .................. 8

*ALRB v. Superior Court (Pandol & Sons)*, 16 Cal. 3d 392 (1976) ....................... 1

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ................................. 6

*Hendler v. United States*, 952 F.2d 1364 (Fed. Cir. 1991) .............................. 3

*Horne v. Dep't of Agric.*, 135 S. Ct. 2419 (2015) .................................. 4

*Johnson v. California*, 543 U.S. 499 (2005) .................................... 6

*Kaiser Aetna v. United States*, 444 U.S. 164 (1979) ................................ 4

*Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992) .................................. 7

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) ................... 2

*Lucero v. Sears Holding Mgmt. Corp.*, No. 14-cv-1620,
   2014 WL 6984220 (S.D. Cal. Dec. 2, 2014) ................................. 1

*Mayfield v. United States*, 599 F.3d 964 (9th Cir. 2010) .............................. 6

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ............................... 6-7

*New Jersey v. T.L.O.*, 469 U.S. 325 (1985) ..................................... 1

*Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987) ............................. 1-5

*Otay Mesa Property, L.P. v. United States*, 670 F.3d 1358 (Fed. Cir. 2012) .............. 3

*Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006) ...................... 4-5

*PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980) .......................... 4

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) .................................... 5

*Soldal v. Cook County*, 506 U.S. 56 (1992) ................................... 1, 5

*United States v. Causby*, 328 U.S. 256 (1946) ................................. 2-3

*United States v. Jacobsen*, 466 U.S. 109 (1984) .................................. 5

*Walter v. United States*, 447 U.S. 649 (1980) .................................... 5

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

|  | Page |
|---|---|
| **Regulations** | |
| Cal. Code Regs. tit. 8, § 20900 | 4-5 |
| § 20900(e)(1)(B) | 6 |
| § 20900(e)(5)(C) | 5 |

Pacific Legal Foundation  
930 G Street  
Sacramento, CA 95814  
(916) 419-7111 FAX (916) 419-7747

Reply in Supp. of Mot. for Prelim. Inj.  
No. 1:16-cv-00185-LJO-BAM — - iii -

# INTRODUCTION

The Board's opposition to Plaintiffs' request for a preliminary injunction is based on a fundamental misunderstanding of the constitutional and practical problems posed by the access regulation. Contrary to the Board's contention, Opp. 9-10, there is nothing "limited" about the regulation. A single protest on Plaintiffs' property during a crucial harvest period can be extremely disruptive—whether the protestors "wear a badge" or not. Opp. 10. And it is undisputed that the regulation here allows for three protests each day for 120 days per year. Opp. 9-10. Plaintiffs are seeking an injunction for two of the numerous businesses covered by the regulation. Two business that, by bringing this lawsuit, are sure to be in the crosshairs of the union and the Board.

The Board does not dispute that the regulation authorizes unprecedented intrusions onto Plaintiffs' property; it attempts to justify them by alleging that "greater access to the employer's property is needed." Opp. 14. These unprecedented intrusions show how the access regulation, as applied to Plaintiffs, is unconstitutional. The Board argues that the access regulation should be analyzed as a regulatory taking. The Supreme Court, however, has held that the taking of an easement with no definite termination date is categorically a *per se* taking. *See Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831 (1987). And, although the Board tries to categorize the seizure in this case as "reasonable," a "careful balancing of governmental and private interests" reveals a Fourth Amendment violation. *Soldal v. Cook County*, 506 U.S. 56, 71 (1992) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)).

The Board proclaims that Plaintiffs have provided no "compelling reason" for this Court to "revisit" the California Supreme Court's decision in *ALRB v. Superior Court (Pandol & Sons)*, 16 Cal. 3d 392 (1976). But this Court need not "revisit" that decision at all. It is not bound by state-court applications of federal law, *see Lucero v. Sears Holding Mgmt. Corp.*, No. 14-cv-1620, 2014 WL 6984220, at *4 (S.D. Cal. Dec. 2, 2014), just as federal circuit courts are not bound by the decisions of other circuits. It is up for this Court to decide the constitutional issues in the first instance. A preliminary injunction should issue to prevent egregious violations of Plaintiffs' Fifth and Fourth Amendment rights.

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

# ARGUMENT

## A. Plaintiffs Are Likely To Succeed on the Merits

### 1. The Access Regulation Violates the Fifth Amendment

The right to exclude unwanted persons from private property "has traditionally been considered one of the most treasured strands in an owner's bundle of property rights." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982). The Supreme Court has recognized that deprivation of that right without just compensation violates the Takings Clause—regardless of the scope of the intrusion. *Id.* at 434-35. A government requirement that property owners recognize an easement across private property without compensation is plainly unconstitutional. *Nollan*, 483 U.S. at 831.

The Board does not dispute that the access regulation takes an easement from the Plaintiffs' property. Despite time, place, and manner restrictions in the regulation, union organizers are granted the right to enter private property for 120 days each year as long as the regulation is in effect. Plaintiffs and other California agricultural businesses must surrender their right to exclude trespassers permanently, subject to the whims of the union.

An easement is no less a property right just because it cannot be utilized at all times. The Supreme Court has consistently held that similar access easements are takings without consulting other factors. In *United States v. Causby*, 328 U.S. 256 (1946), the Court declared that periodic low-altitude overflights took an easement across private property even though they did not render the property inhabitable. *Id.* at 261-63, 67. In *Nollan*, the Court stated unequivocally that "[h]ad California simply required the Nollans to make an easement across their beachfront available to the public on a permanent basis in order to increase public access to the beach, . . . we have no doubt there would have been a taking." *Nollan*, 483 U.S. at 831.

The Board argues that a *per se* takings rule is inapplicable to the access regulation because the regulation does not facilitate "permanent physical invasion" of Plaintiffs' property. Instead, the Board characterizes the regulation as a "regulatory restriction" that only authorizes "temporary

///

///

Pacific Legal Foundation
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

Reply in Supp. of Mot. for Prelim. Inj.
No. 1:16-cv-00185-LJO-BAM  - 2 -

admission." Opp. 6. Since the regulation does not grant union organizers around-the-clock access to private property, the Board contends that the *per se* taking doctrine does not apply in this case.[1]

It makes little sense to parse, as the Board does, any distinction between a "temporary" and a "permanent easement." The Supreme Court was not troubled by a similar issue in *Causby*, finding it relevant only to the amount of compensation. *Causby*, 328 U.S. at 268 ("Since on this record it is not clear whether the easement taken is a permanent or a temporary one, it would be premature for us to consider whether the amount of the award made by the Court of Claims was proper."). And no one would argue that the public easement in *Nollan* would not have effected a taking had it been limited to daylight hours or certain months of the year. The easement would still be permanent, because it would continue in perpetuity.

In *Otay Mesa Property, L.P. v. United States*, 670 F.3d 1358 (Fed. Cir. 2012), the Federal Circuit held that the imposition of an easement to "install, maintain, and service sensors" on Otay Mesa's property was a *per se* taking. *Id.* at 1365. The court specifically rejected the argument that "a taking that ends on occurrence of a specified event is temporary." *Id.* at 1364. Instead, in temporary physical taking cases, "the takings at issue usually have specific end dates by the time just compensation is awarded." *Id.* at 1365. The issue was not the scope of the easement itself, but the nature of its termination.

The easement granted to union organizers by the access regulation has no termination date. It ceases to exist only if the Board repeals the regulation. *Cf. id.* at 1367 ("[T]he government has been held to have permanently taken property, despite the fact that '[a]ll takings are "temporary," in the sense that the government can always change its mind at a later time.'" (quoting *Hendler v. United States*, 952 F.2d 1364, 1376 (Fed. Cir. 1991))). It is therefore as permanent as an easement can be, even though the text of the regulation limits its scope.

---

[1] The Board also argues that the access regulation is not a taking, but merely a land-use regulation. Opp. 1. The *Nollan* Court forcefully rejected a similar argument that the taking of a public access easement was simply a use restriction. The Court explained that "[t]o say that the appropriation of a public easement across a landowner's premises does not constitute the taking of a property but rather . . . 'a mere restriction on its use,' is to use words in a manner that deprives them of all their ordinary meaning." *Nollan*, 483 U.S. at 831 (citation omitted). Similarly here, Plaintiffs are not subject to an ordinary use restriction. They must permanently allow an easement across their property for the benefit of union organizers as long as the regulation is in effect.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

Whenever the "[g]overnment physically invades [] an easement in property, it must [] pay just compensation." *Kaiser Aetna v. United States*, 444 U.S. 164, 180 (1979).[2]

The Board's attempt to inject *PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980), into the debate fares no better. In *PruneYard*, the Court held that "a law limiting a property owner's right to exclude certain speakers from an already publicly accessible shopping center did not take the owner's property." *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2429 (2015) (discussing *PruneYard*). The shopping center's decision to make its property open to the public makes *PruneYard* different from cases like *Causby* and *Nollan*, where the government attempted to take an easement across land that was closed to the public. *See Nollan*, 483 U.S. at 832 n.1 ("The holding of [*PruneYard*] is not inconsistent with this analysis, since there the owner had already opened his property to the general public."). Unlike the facts in *PruneYard*, the access regulation here changes the character of the property from a private business to a free-for-all for union protesters.

**2. The Access Regulation Violates the Fourth Amendment**

The access regulation also violates the Fourth Amendment. The Board does not dispute that the access regulation is a seizure under the Fourth Amendment, nor the Plaintiffs' interest in excluding non-employees from their property. *See* Opp. 10-11. The Board instead argues that the seizure is reasonable because Plaintiffs' interests are outweighed by the "important policy" stated in the access regulation itself. Opp. 11 (citing Cal. Code Regs. tit. 8, § 20900).

The Board is wrong. It takes no issue with *Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006), which held that a government map allowing tourists to cut across the plaintiff's private land created a valid Fourth Amendment claim. *Id.* at 488-89. The Board claims that the seizure is reasonable here because the Board has weightier interests. On the contrary, any difference in the weight of the interests between *Presley* and this case favors Plaintiffs.

///

---

[2] The Board's misunderstanding in Footnote 3 of the opposition conflates the ongoing taking with the ongoing effects of that taking. The proceeding between Cedar Point and the Board falls in the latter category, whereas ripeness is concerned with the former.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

Reply in Supp. of Mot. for Prelim. Inj.
No. 1:16-cv-00185-LJO-BAM - 4 -

1   Tellingly, the Board barely mentions Plaintiffs' property interests in this case.  But here,
2 just as in *Presley*, the government is commandeering an easement on Plaintiffs' property for the
3 benefit of third parties.  And here, just as in *Presley*, the fact that this intrusion on property rights
4 is "limited" in some aspects is irrelevant to the constitutional analysis.  *See id.* at 482-83 (police
5 "responded regularly" to eject unwanted parties from the property).

6   If anything, government interference with Plaintiffs' property in this case is even more
7 flagrant.  In *Presley*, the property owners could at least call on law enforcement to eject unwanted
8 third parties.  *Id.*  By contrast, any attempt by the property owners here to take back control of their
9 own property would subject them to further charges under the access regulation.  *See* Cal. Code
10 Regs. tit. 8, § 20900(e)(5)(C).  That is no accident.  Because the ultimate objective of the access
11 regulation is to allow union organizers onto private property, government interference with private
12 property is even greater here.  *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (acts of
13 private persons implicate the Fourth Amendment if made with "participation or knowledge of any
14 government official" (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980))).

15   On the other hand, the access regulation does nothing to advance the Board's proffered
16 interests in "freedom of association, self-organization, and collective bargaining."  Opp. 11
17 (quoting Cal. Code Regs. tit. 8, § 20900).  Freedom of association "presupposes a freedom not to
18 associate."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984).  Union organizers already have
19 access to workers outside of work, but workers do not have many opportunities to avoid union
20 organizers.  *See* PI Mot. 13.  The Board has provided no reason why this Court should advance the
21 freedom of association by preserving, rather than invalidating, the access regulation.

22   Finally, although the Board refers to interests in self-organization and collective bargaining,
23 it does not explain how depriving businesses of their right to exclude non-employees from their
24 property furthers these interests.  The Constitution's property safeguards require "more than an
25 exercise in cleverness and imagination."  *Nollan*, 483 U.S. at 841.  And a "careful balancing of
26 governmental and private interests" leads to the conclusion that the access requirement violates
27 the Fourth Amendment.  *Soldal*, 506 U.S. at 71.
28 ///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

### B. Plaintiffs Will Suffer Irreparable Harm Without a Preliminary Injunction

The Board's disdain for property rights is all the more apparent from its assertion that "fundamental constitutional rights are not at stake" in this case. Opp. 12. But the deprivation of constitutional rights is irreparable harm enough. *See, e.g.*, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). In *Melendres*, the Ninth Circuit held that an unreasonable seizure was "unquestionably [] irreparable injury," *id.*, despite the fact that the Board had not blessed the rights in the Fourth Amendment as "*fundamental* constitutional rights." Opp. 12.[3]

The harm to Plaintiffs—deprivation of their Fifth and Fourth Amendment rights—is not just irreparable, but imminent. Union organizers used the access regulation to conduct disruptive protests on Plaintiffs' property just last year. And the facts demonstrate the "two ways . . . that such injury is likely to recur." *Melendres*, 695 F.3d at 997-98 (quoting *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010)). First, Plaintiffs' injuries "stem[] from" the access regulation. *Id.* at 998 (quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005)). Second, the union protests on Plaintiffs' property are part of a "pattern of officially sanctioned . . . behavior." *Id.* (quoting *Armstrong*, 275 F.3d at 861).

As a practical matter, the access regulation allows organizers to return on a moment's notice—too short to give this Court sufficient time to handle a renewed preliminary injunction motion. *See* Cal. Code Regs. tit. 8, § 20900(e)(1)(B) (allowing union organizers access to private property for 30 days as soon as the union files notice with the Board). Granting this motion for limited injunctive relief is therefore the only way to prevent irreparable harm.

### C. Balance of Equities Tips Sharply in Plaintiffs' Favor

Having disregarded Plaintiffs' constitutional claims, the Board discounts "even the possibility of irreparable harm." Opp. 13. But as discussed above, the access regulation violates Plaintiffs' constitutional rights in multiple ways. These constitutional violations lead to additional

---

[3] The Board's observation that there is "no presumption of irreparable harm when . . . damage to plaintiff is primarily economic" is strange. Opp. 12. Plaintiffs are seeking injunctive relief. *See* Complaint ¶¶ 57-58, 65.

hardships on Plaintiffs' property rights. For instance, Plaintiffs can do nothing while union organizers conduct disruptive protests on Plaintiffs' property for up to 120 days per year — spread out in 30 day chunks that begin at the union's whim.

By contrast, the Board has not even attempted to explain why it "cannot effectively carry out [State] policy if it is unable to enforce" the access regulation against just two of the dozens of agricultural businesses in California. Opp. 13. In any event, an interest in access must give way to property rights in all but "the rare case" in which workers are "isolated from the ordinary flow of information." *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 540 (1992). The workers here do not live in "logging camps," *id.* at 539. Some stay in hotels; others live in their own homes. PI Mot. 13.

The Board's primary counterargument—that "greater access to the employer's property" is needed based on testimony from Board hearings—is the ultimate expression of paternalism. Opp. 14. The access regulation is intended to provide workers with an avenue to receive information about their rights. But it is decidedly not a mandate to hassle workers on private property until they have more than "little to no knowledge about the ALRA/ALRB." Opp. 14. The balance of equities thus tips sharply in Plaintiffs' favor.

**D. Granting Preliminary Injunctive Relief Is in the Public Interest**

The Board has no response to the Ninth Circuit's clear command that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (quotation marks and citation omitted). Instead the Board alleges that Plaintiffs seek "to overturn the status quo." Opp. 15. Not at all. A limited preliminary injunction preventing the Board from enforcing the regulation against two businesses would hardly change the existing state of affairs. Union protesters went to nearly 60 other businesses just last year, and injunctive relief—for better or worse—would not prevent the union from conducting protests on those properties.

///
///
///
///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111  FAX (916) 419-7747

E.  The "Serious Questions" Test Provides an
    Additional Basis for Preliminary Relief

The traditional four-factor test for a preliminary injunction is easily met in this case, but—at a minimum—there are "serious questions going to the merits" that require preliminary relief. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The access regulation promotes unprecedented intrusions on Plaintiffs' property. Those intrusions raise serious questions as to whether the access regulation is consistent with the constitutional guarantees stated in the Fifth and Fourth Amendments.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction against the enforcement of the access regulation on Fowler Packing Company and Cedar Point Nursery should be granted.

DATED: March 16, 2016.

Respectfully submitted,

DAMIEN M. SCHIFF
JOSHUA P. THOMPSON
CHRISTOPHER M. KIESER
WENCONG FA
HOWARD A. SAGASER
IAN B. WIELAND


By     /s/ Wencong Fa
       WENCONG FA

Attorneys for Plaintiffs

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747