DAMIEN M. SCHIFF, No. 235101
E-mail: dms@pacificlegal.org
JOSHUA P. THOMPSON, No. 250955
E-mail: jpt@pacificlegal.org
CHRISTOPHER M. KIESER, No. 298486
E-mail: cmk@pacificlegal.org
WENCONG FA, No. 301679
E-mail: wf@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747

HOWARD A. SAGASER, No. 72492
E-mail: has@sw2law.com
IAN B. WIELAND, No. 285721
E-mail: ian@sw2law.com
Sagaser, Watkins & Wieland, PC
7550 North Palm Avenue, Suite 100
Fresno, California 93711
Telephone:  (559) 421-7000
Facsimile:  (559) 473-1483

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDAR POINT NURSERY and FOWLER PACKING CO.,<br><br>             Plaintiffs,<br><br>     v.<br><br>WILLIAM B. GOULD IV, GENEVIEVE SHIROMA, CATHRYN RIVERA-HERNANDEZ, AND J. ANTONIO BARBOSA, members of the Agricultural Labor Relations Board in their official capacities,<br><br>             Defendants. | No. 1:16-cv-00185-LJO-BAM<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: March 23, 2016<br>Time: 9:00 a.m.<br>Courtroom 4, 7th Floor<br>Judge Lawrence J. O'Neill |

Suppl. Brief in Supp. of Mot. for Prelim. Inj.
No. 1:16-cv-00185-LJO-BAM

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. PLAINTIFFS' INTERESTS IN AVOIDING THE SEIZURE OF THEIR
   PROPERTIES FOR UNION PROSELYTIZING ARE SUBSTANTIAL . . . . . . . . . . . 1

   A. The Access Regulation Threatens Sanitation and Safety . . . . . . . . . . . . . . . . . . . . . 1

   B. The Access Regulation Threatens Productivity . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   C. The Access Regulation Threatens Goodwill and Reputation . . . . . . . . . . . . . . . . . . 3

II. THE BOARD'S INTERESTS IN SEIZING PLAINTIFFS' PROPERTY
    FOR UNION PROSELYTIZING ARE INSUBSTANTIAL . . . . . . . . . . . . . . . . . . . . . 4

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

# TABLE OF AUTHORITIES

Page

**Cases**

*Lechmere, Inc. v. Nat'l Labor Relations Bd.*, 502 U.S. 527 (1992) .................... 5-6

*Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir. 1980) ............................. 3

*Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005) .......................... 4

*Qualley v. Clo-Tex Int'l., Inc.*, 212 F.3d 1123 (8th Cir. 2000) ....................... 5

*United States v. 4,432 Mastercases of Cigarettes*, 448 F.3d 1168 (2006) ............... 4

*United States v. Jacobsen*, 466 U.S. 109 (1984) ...................................... 1

*United States v. Place*, 462 U.S. 696 (1983) ......................................... 1

*United States v. Sullivan*, 797 F.3d 623 (9th Cir. 2015) ............................. 1

*WMX Technologies, Inc. v. Miller*, 197 F.3d 367 (9th Cir. 1999) ...................... 3

**Regulation and Rule**

Cal. Code Regs. tit. 8, § 20900(e)(5)(C) ............................................. 2

Fed. R. Evid. 201(a) ................................................................. 5

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

# INTRODUCTION

The Court's April 18, 2016, order requests supplemental briefing explaining whether a careful balancing of private and governmental interests demonstrates that the Access Regulation of Defendants William B. Gould IV, *et al.* (the Board), imposes on Plaintiffs Cedar Point Nursery and Fowler Packing Company an unreasonable and therefore unconstitutional seizure.

"The Supreme Court has adopted a balancing test to determine whether a seizure is reasonable." *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). To make that determination, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

As set forth below and in the accompanying declarations and exhibits, the Access Regulation is unconstitutional as applied to Plaintiffs. The interests that it impinges are substantial. In contrast, the governmental interest in allowing warrantless seizures of Plaintiffs' properties is minimal, especially in light of the many alternative avenues open to the Board and unions to inform agricultural employees of their rights.

# ARGUMENT

## I

### PLAINTIFFS' INTERESTS IN AVOIDING THE SEIZURE OF THEIR PROPERTIES FOR UNION PROSELYTIZING ARE SUBSTANTIAL

The Access Regulation substantially interferes with Plaintiffs' possessory interests. *Cf. United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (meaningful governmental interference with a possessory interest results in a seizure under the Fourth Amendment). It does so through threats to sanitation and safety, productivity, and goodwill and reputation.

**A. The Access Regulation Threatens Sanitation and Safety**

The Access Regulation threatens Plaintiffs' ability to comply with various safety protocols mandated by law or demanded by Plaintiffs' vendors and customers. For example, table grapes represent an important product for Fowler. Because these grapes are immediately packed following picking, Fowler's employees must observe strict sanitation protocols that are enforced

P<small>ACIFIC</small> L<small>EGAL</small> F<small>OUNDATION</small>
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

by third-party auditing firms. *See* Rodriquez Decl. ¶ 8 & Exhs. A-B. But the union representatives who, because of the Access Regulation, can reach these employees in the field, are not bound by these protocols and have no reason even to be aware of them.[1] That ignorance raises significant business and health risks. Because Fowler's field workers typically congregate during their breaks and meal periods near open-faced tubs of grapes, union representatives naturally position themselves in this sensitive zone to be able to speak with employees. A union representative could easily contaminate this area if the representative had an unprotected open cut or wound, was not properly dressed with protective clothing, or had a viral condition, such as influenza, mononucleosis, hepatitis, or even the common cold. Fowler's safety protocols for its employees—such as requiring packers to cover their street clothes with aprons and forbidding employees exhibiting symptoms of illness to work[2]—minimize these risks. Rodriquez Decl. ¶ 7. The Access Regulation thwarts Fowler's ability to implement these protocols effectively. As a result, the Access Regulation raises substantially the risk that Fowler will be found out of compliance during an audit. *Id*. ¶ 8. *See id*. Exh. A at 2 (Audit Question 1.03.04 requiring documentation for "daily incidents" and "[u]nusual [o]ccurence[s]"); *id*. Exh. B at 16 (Audit Questions 2.10.01 through 2.10.05 regarding sanitation guidelines for workers, including requirements for illness and wounds, as well as eating, drinking, and even gum chewing in the growing areas); *id*. at 19 (Audit Question 2.10.12 regarding the presence of foreign material in the growing areas).

For Cedar Point, the Access Regulation directly thwarts its ability to ensure a safe working environment for its employees. During harvest time, operations on Cedar Point's property are fast-paced and involve a variety of heavy equipment. For employee safety, Cedar Point strictly

---

[1] Although in theory Fowler could attempt to instruct union representatives about these protocols, such efforts would create a separate and serious risk of precipitating a charge of unfair labor practices. *See* Cal. Code Regs. tit. 8, § 20900(e)(5)(C) ("Interference by an employer with a labor organization's right of access . . . . may constitute an unfair labor practice . . . ."). *Cf*. Parnagian Decl. ¶ 8 (noting that, in July, 2015, the union filed labor charges contending that Fowler had denied the union access to its property).

[2] Fowler operates an on-site medical clinic that provides free medical care for its employees and their families. Parnagian Decl. ¶ 4.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111  FAX (916) 419-7747

regulates when and where employees may stand or walk on the property, especially within the trim sheds (the areas where the strawberry plants are prepared for shipping). Adhering to these protocols is essential for safety. For example, during harvest time, heavy bins are placed on tracks within the trim sheds to facilitate the transport of plants from the coolers to the packing areas. If one does not pay attention to where one is standing, one can easily be smashed by a moving 2,500-pound bin. Similarly, if one does not know the areas where forklifts or other heavy equipment operate within the trim sheds, one can very easily be struck by the equipment. These concerns are exacerbated when unions seek to again access (as the United Farm Workers did) during early morning hours when it is still dark on the property. Halpenny Decl. ¶ 7.

### B. The Access Regulation Threatens Productivity

The Access Regulation threatens the productivity of Plaintiffs and their employees. For example, union representatives typically gain access to Fowler's property during employees' meal period. Fowler's employees frequently fail to eat their lunches during union presentations, and consequently typically ask their supervisors for additional time to eat following the presentations. Although Fowler grants these requests as a courtesy to its employees, this unnecessary loss of time has a negative economic impact. It hurts Fowler's piece-rate employees, who lose additional opportunities to pick. It also hurts Fowler, given that many of its products—such as table grapes—are extremely perishable. Rodriquez Decl. ¶ 9.

Similarly for Cedar Point, union access has a direct and negative impact on productivity and on employee morale. For example, the union protests staged at Cedar Point last year substantially increased the amount of time required to do the same amount of strawberry trimming work, and resulted in the departure of dozens of employees. McEwen Decl. ¶ 7; Garcia Decl. ¶ 7; Halpenny Decl. ¶ 8.

### C. The Access Regulation Threatens Goodwill and Reputation

The Access Regulation hurts Plaintiffs' goodwill and reputation. *Cf. Marrero v. City of Hialeah*, 625 F.2d 499, 514 (5th Cir. 1980) (injury to business reputation is compensable as the result of the violation of one's Fourth Amendment rights), *rejected on other grounds by WMX Technologies, Inc. v. Miller*, 197 F.3d 367, 375-76 & n.4 (9th Cir. 1999) (en banc) (indirect

impairment of business goodwill is not constitutionally actionable unless accompanied by direct governmental violation of one's constitutional rights). For example, Fowler has expended substantial effort to maintain good employee-management relations, through the establishment of an anonymous toll-free complaint hotline, among other initiatives. The Access Regulation threatens this good relationship because it paints Fowler as a wrongdoer. Not surprisingly, Fowler's employees interpret the repeated union intrusions, allowed by the government, as proof of that wrongdoing. A similar sentiment is created among Fowler's vendors and customers, making it less likely that they will continue to do business with Fowler. Rodriquez Decl. ¶ 10.

In like manner, union access to Cedar Point has resulted in the demoralization and loss of employees. *See* McEwen Decl. ¶ 7; Garcia Decl. ¶ 7. Following last year's union protest, many Cedar Point employees were visibly shaken and scared by what had transpired. Halpenny Decl. ¶ 8. Since that protest, every labor contractor that has contacted Cedar Point has inquired about the ongoing "union" issue and has expressed concern about its business relationship with Cedar Point. *Id.* ¶ 9.

## II

**THE BOARD'S INTERESTS IN SEIZING PLAINTIFFS' PROPERTY FOR UNION PROSELYTIZING ARE INSUBSTANTIAL**

The Board contends that it has substantial interests in "safeguard[ing] the rights of agricultural employees to freedom of association, self-organization, and collective bargaining." Opp'n to Prelim. Inj. 11. Assuming *arguendo* that these are significant governmental interests, the Board has made no showing that it needs the extraordinary measure of warrantless seizures of Plaintiffs' properties to vindicate them. *See Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (a warrantless seizure is presumptively unreasonable and the burden is on the government to justify it). *See also United States v. 4,432 Mastercases of Cigarettes*, 448 F.3d 1168, 1179 (2006) (a warrantless inspection is unreasonable if unnecessary to further the larger regulatory scheme).

///

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111  FAX (916) 419-7747

1    The Board cites testimony from recent hearings that, despite decades of efforts,
2 farmworkers are unaware of their rights.³  Opp'n to Prelim. Inj. 14.  It is not clear why the Board
3 believes that this evidence supports the need to seize Plaintiffs' property.  After all, the Access
4 Regulation has been in existence for decades too.  That it has yet to succeed in informing laborers,
5 as a class, of their rights, is a bizarre reason to conclude that the Access Regulation nevertheless
6 is necessary to inform Plaintiffs' employees of their rights.  At most, the Board's purported
7 evidence demonstrates that there are communication issues with today's typical farmworker.
8 Opp'n to Prelim. Injunc. 14.  But such evidence does not establish that communication issues exist
9 with respect to Plaintiffs' employees.  In fact, the evidence is to the contrary.  *See* Rodriquez Decl.
10 ¶ 4 (vast majority of Fowler's employees can communicate in Spanish); Halpenny Decl. ¶ 4 (vast
11 majority of Cedar Point's employees can communicate in Spanish).  *See also* McEwen Decl. ¶ 5;
12 Garcia Decl. ¶ 5.  In any event, the very communication issues that the Board raises as a reason
13 for needing the Access Regulation would apply even with the Access Regulation:  a person who
14 speaks only an indigenous language will not understand English or Spanish any better simply
15 because these unfamiliar languages are spoken in-person as opposed to on the radio or through
16 other means.  *Cf.* Rodriquez Decl. ¶ 4 (only 1% of Fowler employees cannot converse in English
17 or Spanish); Halpenny Decl. ¶ 4 (no knowledge of any Cedar Point employee who cannot converse
18 in English or Spanish).

19    More importantly, ample alternative means exist for the Board and unions to access
20 Plaintiffs' employees.  These employees can be reached after hours at their hotels or their homes.
21 Fahner Decl. ¶ 5; Parnagian Decl. ¶ 5.  *Cf. Lechmere, Inc. v. Nat'l Labor Relations Bd.*, 502 U.S.
22 527, 537 (1992) (Under federal labor law, labor interests prevail over private property rights only
23 ///
24 ///

---

³ To the extent that the Board seeks judicial notice of these documents to establish facts relevant to the Board's legal defense of the Access Regulation, notice of such "legislative" facts would be improper.  *See* Fed. R. Evid. 201(a) (authorizing judicial notice of adjudicative not legislative facts).  *Cf. Qualley v. Clo-Tex Int'l., Inc.*, 212 F.3d 1123, 1128 (8th Cir. 2000) (explaining that legislative facts do not relate directly to the litigants and are used by courts only in construing law or policy).

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

in "the rare case" that employees cannot be reached "through the usual channels."). They generally have cellular or smart phones. Sanders Decl. ¶ 5; Arias Decl. ¶ 5; McEwen Decl. ¶ 5; Garcia Decl. ¶ 5. They regularly speak about Facebook, Sanders Decl. ¶ 5, as well as Instagram and Snapchat, McEwen Decl. ¶ 6; Garcia Decl. ¶ 6, thereby revealing a knowledge and familiarity with social media and presumably an accessability through these channels. *Cf. Lechmere, Inc.*, 502 U.S. at 540 (Under federal labor law, labor interests prevail over private property rights generally only if employees "are isolated from the ordinary flow of information that characterizes our society."). The United Farm Workers itself acknowledges that modern methods of communications are effective. The Union runs a multi-channel and multi-state radio network—Radio Campesina—which disseminates worker-related information. Desormeaux Decl. Exh. A. The Union runs radio advertisements to reach farm workers. *Id*. Exhs. B & C. It also maintains a webpage, as well as a substantial Facebook presence. *Id*. Exhs. D & E. Presumably, the Union would not avail itself of these modes of communication if it believed that farm laborers could not be reached through them.

Many avenues are available to the Board to achieve any interest it may have in the education of Plaintiffs' employees, without recourse to the extraordinary method of warrantless seizures of Plaintiffs' property. The Access Regulation is not necessary to achieve the Board's interests.

### CONCLUSION

The Access Regulation authorizes warrantless seizures of Plaintiffs' properties. These seizures substantially interfere with Plaintiffs' business operations. The Board's interests in these

///
///
///
///
///
///
///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111  FAX (916) 419-7747

seizures are slight. Therefore, the seizures are unreasonable, and the Access Regulation, as applied to Plaintiffs, is unconstitutional. A preliminary injunction should issue.

DATED: May 2, 2016.

                                                   Respectfully submitted,

DAMIEN M. SCHIFF
JOSHUA P. THOMPSON
CHRISTOPHER M. KIESER
WENCONG FA
HOWARD A. SAGASER
IAN B. WIELAND


By      /s/ Damien M. Schiff
          DAMIEN M. SCHIFF

Attorneys for Plaintiffs

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747