DAMIEN M. SCHIFF, No. 235101
E-mail: dms@pacificlegal.org
JOSHUA P. THOMPSON, No. 250955
E-mail: jpt@pacificlegal.org
CHRISTOPHER M. KIESER, No. 298486
E-mail: cmk@pacificlegal.org
WENCONG FA, No. 301679
E-mail: wf@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

HOWARD A. SAGASER, No. 72492
E-mail: has@sw2law.com
IAN B. WIELAND, No. 285721
E-mail: ian@sw2law.com
Sagaser, Watkins & Wieland, PC
7550 North Palm Avenue, Suite 100
Fresno, California 93711
Telephone: (559) 421-7000
Facsimile: (559) 473-1483

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDAR POINT NURSERY and FOWLER PACKING CO., <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM B. GOULD IV, GENEVIEVE SHIROMA, CATHRYN RIVERA-HERNANDEZ, AND J. ANTONIO BARBOSA, members of the Agricultural Labor Relations Board in their official capacities, <br><br> Defendants. | No. 1:16-cv-00185-LJO-BAM <br><br> **DECLARATION OF RACHEL HALPENNY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: March 23, 2016 <br> Time: 9:00 a.m. <br> Courtroom 4, 7th Floor <br> Judge Lawrence J. O'Neill |

Decl. of Halpenny in Support of Mot. for Prelim. Inj.
No. 1:16-cv-00185-LJO-BAM

I, Rachel Halpenny, declare as follows:

1. The facts set forth in this declaration are based on my personal knowledge and, if called as a witness, I could and would competently testify thereto under oath. As to those matters which reflect a matter of opinion, they reflect my personal opinion and judgment upon the matter.

2. I am currently employed by Cedar Point Nursery as the Human Resources Director and the CEO Assistant. I have held these positions since January, 2011. I have been employed by Cedar Point since September, 2010.

3. My duties as Cedar Point's Human Resources Director including hiring, recruitment, and related paperwork. I also serve as Cedar Point's designated first responder for safety issues, and organize and lead our employee safety meetings and training.

4. Approximately 90% of Cedar Point's employees (local as well as seasonal contract employees) converse principally in Spanish, with the remaining 10% principally in English. I am unaware of any employee who cannot converse in either of these languages.

5. I am familiar with the Access Regulation that is challenged in this action.

6. The Access Regulation poses a significant safety issue for Cedar Point and its employees. During harvest time, operations on Cedar Point's property, including within the trim sheds, are very fast-paced and involve a variety of heavy equipment, including tractors, excavators, forklifts, and heavy bins. For employee safety, Cedar Point is very strict about when and where employees may stand or walk on the property and in the trim sheds. Knowing these protocols can be a life-or-death matter. For example, during harvest time, heavy bins are placed on metal tracks within the trim sheds to facilitate the transport of plants from the coolers to the packing areas. If one does not pay attention to whether one is standing on these tracks, one could very easily be struck by a moving heavy plastic bin, which typically weighs 2,500 pounds. Similarly, if one does not know the areas where forklifts or other heavy equipment operate within the trim sheds, one could very easily be struck by the equipment.

7. I was present at Cedar Point's property last year when union protesters from the United Farm Workers of America came on to the property and staged a protest with bull horns and other distracting activity. The protest occurred in the early morning hours when the trim sheds and

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

outside areas were dark. These protesters had no reason to know about Cedar Point's safety protocols or the dangers of not knowing whether one is standing in a safe area on the property.

8. Following the union protest, I went in to the trim sheds and observed that many employees were visibly scared and shaken by what had transpired. Cedar Point wants to provide a safe working environment for its employees and has no history of any protests. It is therefore not surprising that these employees, many of whom have worked at Cedar Point for a decade or more, were frightened by the union's actions. As a result of the union protest, Cedar Point lost approximately 75 employees.

9. Since last year's protest, every labor contractor who has contacted me has asked whether Cedar Point has resolved the issues with the union. These contractors are now concerned about whether to contract with Cedar Point, a concern that was not present prior to the union protests.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this __28__ th day of April, 2016, at __Klamath Falls__, Oregon.

_____
RACHEL HALPENNY