KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
MARK R. BECKINGTON, State Bar No. 126009
Supervising Deputy Attorney General
R. MATTHEW WISE, State Bar No. 238485
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 323-8549
 Fax: (916) 324-3385
 E-mail: Matthew.Wise@doj.ca.gov
*Attorneys for Defendants William B. Gould IV,
Genevieve Shiroma, Cathryn Rivera-Hernandez, and
J. Antonio Barbosa*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CEDAR POINT NURSERY and FOWLER PACKING CO.,**<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>**WILLIAM B. GOULD IV, GENEVIEVE SHIROMA, CATHRYN RIVERA-HERNANDEZ, AND J. ANTONIO BARBOSA, members of the Agricultural Labor Relations Board in their official capacities,**<br><br>　　　　　　　Defendants. | 1:16-cv-00185-LJO-BAM<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Dept:　　Courtroom 4, 7th Floor<br>Judge:　Lawrence O'Neill<br><br>Action Filed: February 16, 2016 |

**TABLE OF CONTENTS**

                                                                            **Page**

Introduction .................................................................................................................... 1

Legal Standard ............................................................................................................... 2

Argument ....................................................................................................................... 2

    I.    Plaintiffs Cannot Prevail on Their Fourth Amendment Claim Because They Did Not Suffer a Meaningful Interference with Their Possessory Interests and the Access Regulation Can Be Reasonably Applied to Them ......................... 2

    II.    Plaintiffs Cannot Meet the Other *Winter* Factors or the "Serious Questions" Test ................................................................................................................... 7

Conclusion ..................................................................................................................... 8

i

Defs.' Supplemental Br. in Opp'n to Pls.' Mot. for Prelim. Inj. (1:16-cv-00185-LJO-BAM)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Costas-Elena v. Mun. of San Juan*
   714 F. Supp. 2d 263 (D. Puerto Rico 2010)..................................................................4

*Eastex v. NLRB*
   437 U.S. 556 (1978)........................................................................................................7

*Freeman v. City of Dallas*
   242 F.3d 642 (5th Cir. 2001)..........................................................................................4

*McCullen v. Coakley*
   573 U.S. __, 134 S. Ct. 2518 (2014)..............................................................................3

*NLRB v. Magnavox Co.*
   415 U.S. 322 (1974)........................................................................................................7

*Presley v. City of Charlottesville*
   464 F.3d 480 (4th Cir. 2006)..........................................................................................4

*Shell Offshore, Inc. v. Greenpeace, Inc.*
   709 F.3d 1281 (9th Cir. 2013)........................................................................................2

*Soldal v. Cook County*
   506 U.S. 56 (1992)..........................................................................................................3

*United States v. Jacobsen*
   466 U.S. 109 (1984)........................................................................................................3

*Winter v. Natural Res. Def. Council*
   555 U.S. 7 (2008)........................................................................................................2, 7

ii

Defs.' Supplemental Br. in Opp'n to Pls.' Mot. for Prelim. Inj. (1:16-cv-00185-LJO-BAM)

# TABLE OF AUTHORITIES
## (continued)

Page

**OTHER AUTHORITIES**

California Code of Regulations, Title 8
    § 20900 ......................................................................................................................1, 2, 5
    § 20900(b) .........................................................................................................................5
    § 20900(c) ......................................................................................................................1, 5
    § 20900(d) .....................................................................................................................1, 5
    § 20900(e) .........................................................................................................................1
    § 20900(e)(1)(A) ..............................................................................................................4
    § 20900(e)(1)(B) ..............................................................................................................4
    § 20900(e)(3)(A) ..............................................................................................................4
    § 20900(e)(3)(B) ..............................................................................................................4
    § 20900(e)(4)(A) ..............................................................................................................4
    § 20900(e)(4)(B) ..............................................................................................................4
    § 20900(e)(4)(C) ..............................................................................................................3
    § 20900(e)(5)(A) ..............................................................................................................3
    § 20900(e)(5)(B) ..............................................................................................................3

iii

Defs.' Supplemental Br. in Opp'n to Pls.' Mot. for Prelim. Inj. (1:16-cv-00185-LJO-BAM)

# INTRODUCTION

Plaintiffs Cedar Point Nursery and Fowler Packing Company (Plaintiffs) moved for a preliminary injunction to enjoin Defendant Agricultural Labor Relations Board members[1] (Defendants) from enforcing a regulation that provides union organizers a qualified right of access to the premises of an agricultural employer to meet and solicit the support of employees. This Court denied Plaintiffs' motion as to their Fifth Amendment claim because they did not show a substantial likelihood of success on the merits. Mem. Decision and Order at 1, 13, ECF No. 13. As to Plaintiffs' Fourth Amendment claim, the Court observed that Plaintiffs did not show that the alleged seizure of their property was unreasonable, but requested supplemental briefing from both parties to address whether "careful balancing of governmental and private interests" allows for the access regulation's reasonable application to Plaintiffs. *Id.* at 12, 14.

Plaintiffs cannot meet their burden to show that the access regulation, as applied to them, is unconstitutional under the Fourth Amendment. The government's substantial interest in continuing to enforce this regulation outweighs Plaintiffs' narrow property interests, particularly because the regulation's time, place, and manner restrictions minimize any interference with Plaintiffs' possessory interests. *See* Cal. Code Regs. tit. 8, § 20900(e). The regulation was enacted to carry out the State of California's policy "to encourage and protect the right of agricultural employees to full freedom of association, self-organization, and designation of representatives of their own choosing." Cal. Code Regs. tit. 8, § 20900 (citing Cal. Labor Code § 1140.2). The Board designed the regulation to apply universally to all agricultural employers in the state, rather than on a case-by-case basis, largely because alternative channels of effective communication that are typical in industrial settings do not exist or are inadequate in the agricultural context. Cal. Code Regs. tit. 8, § 20900(c), (d). The Board's September 2015 hearings confirmed the widespread challenges of notifying farmworkers of their rights under the Agricultural Labor Relations Act, further underscoring the importance of implementing this

---

[1] Defendants are Agricultural Labor Relations Board Chairman William B. Gould IV, members Genevieve Shiroma and Cathryn Rivera-Hernandez, and executive secretary Antonio Barbosa.

1

regulation statewide. Because Plaintiffs cannot show that their interests are so unique or exceptional that they should be exempted from the regulation's reach, the regulation can be reasonably applied to them, and their Fourth Amendment claim is unlikely to succeed on the merits. This Court should deny Plaintiffs' motion for a preliminary injunction in its entirety.

## LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). Plaintiffs must establish that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in their favor, and that an injunction is in the public interest. *Id.* at 20. Alternatively, if Plaintiffs merely show that there are "serious questions going to the merits," then a preliminary injunction can issue only if the balance of the equities tips "sharply" in the plaintiffs' favor and the other two *Winter* factors are satisfied. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## ARGUMENT

### I. PLAINTIFFS CANNOT PREVAIL ON THEIR FOURTH AMENDMENT CLAIM BECAUSE THEY DID NOT SUFFER A MEANINGFUL INTERFERENCE WITH THEIR POSSESSORY INTERESTS AND THE ACCESS REGULATION CAN BE REASONABLY APPLIED TO THEM

Plaintiffs moved for a preliminary injunction in part based on their allegation that the access regulation set forth at California Code of Regulations title 8, section 20900 violates their rights under the Fourth Amendment's Seizure Clause. Yet the access regulation can be reasonably applied to Plaintiffs, which may explain why they have not shown "how 'a careful balancing of governmental and private interests' leads to the conclusion that the Access Regulation's previous or future application to them is unreasonable." Mem. Decision and Order at 12. Even with the opportunity for supplemental briefing, Plaintiffs cannot make this showing.

This Court observed that "[w]hile some of the parties' arguments suggest that Plaintiffs are raising a facial challenge, it is clear from the remedies sought by the Complaint and their request

2

Defs.' Supplemental Br. in Opp'n to Pls.' Mot. for Prelim. Inj. (1:16-cv-00185-LJO-BAM)

for preliminary injunction that Plaintiffs bring a challenge to the Access Regulation as it is applied to them." Mem. Decision and Order at 3 n.1. For this reason, as to Plaintiffs' Fourth Amendment claim, the question before the Court is whether the access regulation "may reasonably be applied to Plaintiffs." *Id.* at 14.

To prevail on an "as-applied" challenge, plaintiffs must show "that the law has in fact been (or is sufficiently likely to be) unconstitutionally applied to him." *McCullen v. Coakley*, 573 U.S. __, 134 S. Ct. 2518, 2534 (2014) (emphasis omitted). Here, Plaintiffs must show that the access regulation has been or is likely to be applied to them to create an unconstitutional seizure, such that (1) they have suffered a "meaningful interference" with their possessory interests in property, *i.e.*, a seizure, *see United States v. Jacobsen*, 466 U.S. 109, 113 (1984), and (2) based on a "careful balancing of governmental and private interests," the alleged seizure was unreasonable, *see Soldal v. Cook County*, 506 U.S. 56, 71 (1992).

In their motion, Plaintiffs allege that they suffered a meaningful interference because in their view the access regulation authorizes union organizers to "go on private property to conduct disruptive protests in furtherance of the union's own agenda." P. & A. in Supp. of Pls.' Mot. for Prelim. Inj. [Mot.] at 1, ECF No. 4. Yet the regulation explicitly prohibits "conduct disruptive of the employer's property or agricultural operations." Cal. Code Regs. tit. 8, § 20900(e)(4)C. The regulation also protects employers from this prohibited conduct by barring any organizer that violates this provision from taking access, and by recognizing that such violations may constitute an unfair labor practice. Cal. Code Regs. tit. 8, § 20900(e)(5)(A), (B). Complaints of union actions proscribed by the regulation do not provide a basis to find the regulation unconstitutional as applied, particularly when Plaintiffs have not exercised the legal remedies available to them to address the alleged violations. It would be inappropriate to find that Defendant Board members unconstitutionally applied the access regulation to Plaintiffs based on a dispute between Plaintiffs and the United Farm Workers (UFW) that has not been resolved by the Board.

///

///

///

3

Defendants will not speculate about what additional private interests Plaintiffs may cite in the supplemental briefing in support of their Fourth Amendment claim.[2] What is clear is that the regulation merely authorizes a limited number of union organizers to access the employer's property, with prior notice and identification given, during four thirty-day periods in a calendar year for an hour before work, during lunch, or after work. *See* Cal. Code Regs. tit. 8, § 20900(e)(1)(A), (e)(1)(B), (e)(3)(A), (e)(3)(B), (e)(4)(A), (e)(4)(B). The regulation cannot lawfully be applied in a manner inconsistent with these restrictions; thus, its application to Plaintiffs cannot have caused more than a minimal imposition on their possessory interests.

And even if the interference with Plaintiffs' possessory interests is deemed to be meaningful,[3] Plaintiffs must meet a heavy burden to show that the regulation was not reasonably applied to them. *See Freeman v. City of Dallas*, 242 F.3d 642, 654 (5th Cir. 2001) ("In the context of reviewing civil administrative and regulatory enforcement of laws enacted pursuant to the traditional police power, Fourth Amendment reasonableness means non-arbitrariness"). This is particularly true when, as here, the interference is "slight, limited . . . in time, place, and purpose." *See Costas-Elena v. Mun. of San Juan*, 714 F. Supp. 2d 263 (D. Puerto Rico 2010). Plaintiffs have presented no evidence that the Board has arbitrarily applied the access regulation to them, and have not met their burden here.

---

[2] Though Plaintiffs previously argued that the access regulation subjected them to a "loss of goodwill," Mot. at 12, this Court correctly noted that they did not "provide any authority for the proposition that [this] is a cognizable form of injury that would support an unlawful seizure claim." Mem. Decision and Order at 13. In addition, as described in Defendants' opposition brief, this claim is entirely speculative. Opp'n at 12-13.

[3] Because the Defendants' opposition brief focused on Plaintiffs' failure to address whether the alleged seizure was reasonable, the Court suggested that the Defendants "do[] not appear to dispute that the Access Regulation may cause a seizure." Mem. Decision and Order at 12. But the Defendants do not concede that a seizure occurred here. The prospect that Plaintiffs have suffered a meaningful interference with their possessory interests is slight because the regulation's time, place, and manner restrictions significantly limit union access to the Plaintiffs' worksites. *See* Mem. of P. & A. in Opp'n to Pls.' Mot. for Prelim. Inj. [Opp'n] at 9-10 (citing Cal. Code Regs. tit. 8, § 20900(e)), ECF No. 7. And Plaintiffs' possessory interests may not even extend to the "open fields" where the access regulation is operable. *See Presley v. City of Charlottesville*, 464 F.3d 480, 484 n.3 (4th Cir. 2006) (citing *Oliver v. United States*, 466 U.S. 170, 181 (1984) ("We conclude, from the text of the Fourth Amendment and from the historical and contemporary understanding of its purposes, that an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers")).

4

Defs.' Supplemental Br. in Opp'n to Pls.' Mot. for Prelim. Inj. (1:16-cv-00185-LJO-BAM)

Balanced against Plaintiffs' narrow property interests are Defendants' considerable interests in the access regulation's enforcement. The regulation is currently the Board's primary means of implementing the State's policy to encourage and protect the rights of agricultural employees to freedom of association, self-organization, and designation of representatives of their own choosing. Cal. Code Regs. tit. 8, § 20900. Defendants have as strong an interest in enforcing this policy against Plaintiffs as they do against any agricultural employer in the state.

Indeed, the regulation was designed to apply universally to all agricultural employers statewide, not on a case-by-case basis. Cal. Code Regs. tit. 8, § 20900(d). The Board recognized that in the agricultural setting, in contrast to the industrial setting, "unions seeking to organize . . . do not have available alternative channels of effective communication." Cal. Code Regs. tit. 8, § 20900(c). Because of the pervasive nature of this issue, the Board determined that "bringing certainty and a sense of fair play to a presently unstable and potentially volatile condition in the agricultural fields of California can best be served by the adoption of rules on access which provide clarity and predictability to all parties." Cal. Code Regs. tit. 8, § 20900(d). The Board's reasoning for adopting this regulation demonstrates that it engaged in the careful balancing of governmental and private interests required by the Fourth Amendment's reasonableness standard: "[u]nder such circumstances . . . a reasonable and just accommodation [must] be made between the right of unions to access and the legitimate property and business interests of the employer." Cal. Code Regs. tit. 8, § 20900(b).

Plaintiffs discount the governmental interest advanced by the regulation by feigning insult at the suggestion that their employees, who purportedly live in hotels or residences, are "isolated from the ordinary flow of information." Mot. at 13 (quoting *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 540 (1992)). But employees need not be sequestered in "logging camps, mining camps, [or] mountain resort hotels" to be inaccessible. *See id.* (quoting *Lechmere*, 502 U.S. at 539-40). Instead, technological and linguistic barriers support the need for the regulation.

The Board's three public hearings in September 2015 confirmed that the challenges in communicating with agricultural employees that led to the access regulation's enactment remain today. Request for Judicial Notice [RJN], Ex. A [Board Memorandum, dated November 23, 2015]

5

at 4 ("In general, despite 40 years of outreach efforts . . . today's farmworkers have little to no knowledge about the [Agricultural Labor Relations Act] and the rights and protections this law affords them"), ECF No. 8. Because a growing percentage of farmworkers are monolingual and cannot read or write their indigenous language, a language barrier significantly hinders the efforts of union organizers to communicate with farmworkers. *Id.* at 5, 30 (noting "the influx of a new generation of workers from more remote areas of Mexico whose native language is not Spanish, but one of the so-called indigenous languages, such as Mixteco, Zapotec, Triqui, Chatino, [or] Purepecha"). These conditions limit the effectiveness of traditional forms of communication, such as communication by cell phone, email, social media, radio, television, or billboard advertisement. *Id.*

For example, though cell phones are widely used on agricultural worksites, Internet access is limited primarily because purchasing a "smart" phone with a data plan "require[s] income that is not available to farmworkers who mainly devote their incomes to their living situations and to providing for their families both here and in Mexico." RJN, Ex. A at 10-11. Even if they had the means to purchase a smart phone, the majority of mestizo and indigenous farmworkers lack the literacy in both computer technology and Spanish to be able to communicate effectively by email or text message. *Id.* at 11-14. And even if these prerequisites were met, cell phone signal coverage in the rural areas where farmworkers live and work is spotty. *Id.* at 15. For these reasons, the Board concluded that cell phones do not provide an effective alternative means of communication with farmworkers.

Plaintiffs' counsel and others suggested at the hearings that farmworkers could also be reached through social media, radio, television, and billboard advertisements. RJN, Ex. A at 19. But largely for the reasons discussed above, these means of communication are no more effective than cell phones. Communication by social media requires a smart phone or computer, as well as technical and linguistic literacy. *Id.* at 19 n.36. Radio station signals are limited in the areas where farmworkers live and work, and radio, television, and billboard advertisements cannot be broadcast in all of the numerous indigenous languages and dialects used by farmworkers. *Id.* at

6

Defs.' Supplemental Br. in Opp'n to Pls.' Mot. for Prelim. Inj. (1:16-cv-00185-LJO-BAM)

19. Even if these advertisements were understood, they offer no opportunity for personal interaction between union organizers and farmworkers. *Id.*

Based on the hearing testimony and supporting evidence, it is clear that allowing for worksite access to farmworkers is critical to the Agricultural Labor Relations Act's mission to "ensure peace in the agricultural fields by guaranteeing justice for all agricultural workers and stability in labor relations." Agricultural Labor Relations Act of 1975, Cal.Stats. 1975, Third Extraordinary Session, c. 1, § 1, p. 4013. This conclusion supports the government's interest in continued enforcement of the access regulation and is consistent with the Supreme Court's observation that "[t]he place of work is . . . uniquely appropriate for dissemination of views concerning the bargaining representative and the various options open to the employees." *NLRB v. Magnavox Co.*, 415 U.S. 322, 325 (1974); *see also Eastex v. NLRB*, 437 U.S. 556, 574 (1978) (the workplace "is the one place where [employees] clearly share common interests and where they traditionally seek to persuade fellow workers in matters affecting their union organizational life and other matters related to their status as employees").

Plaintiffs have not shown that they should be exempted from the statewide reach of the access regulation, and in particular, that other means of communication would be unusually effective at reaching their employees. For example, they do not suggest that their employees have higher than average incomes, technological capabilities, or Spanish literacy rates, or that they live and work in areas with reliable cell phone and radio signals. Nor do Plaintiffs argue that Defendant Board members have unfairly singled them out in enforcing the access regulation. In short, Plaintiffs have not met the heavy burden of showing that the regulation was unreasonably applied to them. Because a careful balancing of the governmental and private interests favors Defendants, Plaintiffs cannot prevail on their Fourth Amendment claim.

## II. PLAINTIFFS CANNOT MEET THE OTHER *WINTER* FACTORS OR THE "SERIOUS QUESTIONS" TEST

Showing a likelihood of prevailing on the merits is but one of the factors that must be met to warrant the issuance of a preliminary injunction. As set forth in Defendants' opposition brief, Plaintiffs have not shown that they will suffer irreparable harm absent a preliminary injunction—

7

Defs.' Supplemental Br. in Opp'n to Pls.' Mot. for Prelim. Inj. (1:16-cv-00185-LJO-BAM)

their fundamental constitutional rights are not at stake, and their claims of injury are neither concrete nor imminent. Opp'n at 11-13. Instead, the balancing of the harms, and the public interest in the regulation's enforcement, favor Defendants. *Id.* at 13-15. And even if Plaintiffs' Fourth Amendment claim were to present a "serious question," the balance of the harms does not tip sharply in their favor. *Id.* at 15. For these additional reasons, Plaintiffs' motion should be denied.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs' motion for a preliminary injunction.

Dated: May 2, 2016

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ R. Matthew Wise*

R. MATTHEW WISE
Deputy Attorney General
*Attorneys for Defendants William B. Gould IV, Genevieve Shiroma, Cathryn Rivera-Hernandez, and J. Antonio Barbosa*

SA2016100631
12236137.doc

8

Defs.' Supplemental Br. in Opp'n to Pls.' Mot. for Prelim. Inj. (1:16-cv-00185-LJO-BAM)

# CERTIFICATE OF SERVICE

Case Name: **Cedar Point Nursery v. William B. Gould IV, et al.**  No. **1:16-cv-00185-LJO-BAM**

I hereby certify that on May 2, 2016, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 2, 2016, at Sacramento, California.

Tracie L. Campbell
Declarant

*Tracie Campbell*
Signature

SA2016100631
12246016.doc