

DAMIEN M. SCHIFF, No. 235101
E-mail: dms@pacificlegal.org
JOSHUA P. THOMPSON, No. 250955
E-mail: jpt@pacificlegal.org
CHRISTOPHER M. KIESER, No. 298486
E-mail: cmk@pacificlegal.org
WENCONG FA, No. 301679
E-mail: wf@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

HOWARD A. SAGASER, No. 72492
E-mail: has@sw2law.com
IAN B. WIELAND, No. 285721
E-mail: ian@sw2law.com
Sagaser, Watkins & Wieland, PC
7550 North Palm Avenue, Suite 100
Fresno, California 93711
Telephone: (559) 421-7000
Facsimile: (559) 473-1483

Attorneys for Plaintiffs

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CEDAR POINT NURSERY and FOWLER PACKING CO.,

Plaintiffs,

v.

WILLIAM B. GOULD IV, GENEVIEVE SHIROMA, CATHRYN RIVERA-HERNANDEZ, AND J. ANTONIO BARBOSA, members of the Agricultural Labor Relations Board in their official capacities,

Defendants.

No. 1:16-cv-00185-LJO-BAM

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Date: May 25, 2016
Time: 8:30 a.m.
Courtroom 4, 7th Floor
Judge Lawrence J. O'Neill

Action Filed: February 16, 2016

1

**TABLE OF CONTENTS**

2

**Page**

3 TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

4 INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

5 HISTORY OF THE ACCESS REGULATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

6 ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

7   I.   *PANDOL & SONS* DOES NOT DICTATE
       THE OUTCOME OF THIS CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

8
    II.   THE UNION ACCESS REGULATION
9         VIOLATES THE TAKINGS CLAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

10  III.   THE ACCESS REGULATION EFFECTS
           AN UNCONSTITUTIONAL SEIZURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

11
    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

# TABLE OF AUTHORITIES

Page

## Cases

*ALRB v. Superior Court (Pandol & Sons)*, 16 Cal. 3d 392 (1976) . . . . . . . . . . . . . . . . . . . . . 2-4

*Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*,
   391 U.S. 308 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cedar Point Nursery v. Gould*, 1:16-cv-00185,
   2016 WL 1559271 (E.D. Cal. Apr. 18, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Evers v. Custer Cnty.*, 745 F.2d 1196 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hendler v. United States*, 952 F.2d 1364 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 7

*Horne v. Dep't of Agric.*, 135 S. Ct. 2419 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hudgens v. NLRB*, 424 U.S. 507 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kaiser Aetna v. United States*, 444 U.S. 164 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kern River Gas Transmission Co. v. Clark Cnty.*,
   757 F. Supp. 1110 (D. Nev. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Key v. Wise*, 629 F.2d 1049 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 9-10

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) . . . . . . . . . . . . . . 3, 5

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992) . . . . . . . . . . . . . . . . . . . 4

*Lucero v. Sears Holding Mgmt. Corp.*, No. 14-cv-1620,
   2014 WL 6984220 (S.D. Cal. Dec. 2, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987 (N.D. Cal. 2013) . . . . . . . . . . . . . . . 9

*NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987) . . . . . . . . . . . . . . . . . . . . . 1, 3, 5-7

*Otay Mesa Property, L.P. v. United States*, 670 F.3d 1358 (Fed. Cir. 2012) . . . . . . . . . . . . 6-7

*Planned Parenthood v. Wilson*, 234 Cal. App. 3d 1662 (1991) . . . . . . . . . . . . . . . . . . . . 7

*Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . 8-9

*PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980) . . . . . . . . . . . . . . . . . . . . . . 7

*Rakas v. Illinois*, 439 U.S. 128 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1

**Page**

2  *Rawlings v. Kentucky*, 448 U.S. 98 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

3  *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4  *Sacramento Area Flood Control Agency, Inc. v. Dhaliwal*,
       236 Cal. App. 4th 1315 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
5
   *Sola Electric Co. v. Jefferson Elec. Co.*, 317 U.S. 173 (1942) . . . . . . . . . . . . . . . . . . . . . . . . 3
6
   *Soldal v. Cook Cnty.*, 506 U.S. 56 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
7
   *United States v. Causby*, 328 U.S. 256 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6
8
   *United States v. Jacobsen*, 466 U.S. 109 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9
9
   *Walter v. United States*, 447 U.S. 649 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
10
   *Wash. Suburban Sanitary Comm'n v. Utilities, Inc. of Md.*,
11       775 A.2d 1178 (Md. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

12  *Williamson County Regional Planning Commission v.
       Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) . . . . . . . . . . . . . . . . . . . . . . . . 8
13

**Statutes**

14

15  Cal. Lab. Code § 1140, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16

**Regulations and Rule**

17  Cal. Code Regs. tit. 8, § 20900 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

          § 20900(e)(1)-(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
18
          § 20900(e)(5)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
19
   Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
20

**Miscellaneous**

21

22  Katz, Lewis R., *In Search of a Fourth Amendment for the Twenty-First Century*,
       65 Ind. L.J. 549 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

23  Siegan, Bernard H., *Non-Zoning Is the Best Zoning*, 31 Cal. W. L. Rev. 127 (1994) . . . . . . . 4

24

25

26

27

28

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**INTRODUCTION**

This is a challenge to a California Agricultural Labor Relations Board (Board) regulation that permits union organizers to enter private agricultural property without the consent of the property owner for the purpose of soliciting new members.  Cal. Code Regs. tit. 8, § 20900.  Plaintiffs Cedar Point Nursery and Fowler Packing Co. challenge the regulation as applied to their properties.  These agricultural businesses have in the past year been subjected to disruptive protests by United Farm Workers organizers who entered their property under the guise of the access regulation.  *See* Compl. ¶¶ 30, 38.  They seek a permanent injunction preventing the Board from enforcing the regulation against them in the future.

The access regulation violates the Fifth Amendment to the United States Constitution.  The regulation amounts to an easement that permits unwanted third parties to enter Plaintiffs' property without permission for 120 days per year, subject to certain time, place, and manner restrictions and a notice requirement.  Cal. Code Regs. tit. 8, § 20900(e)(1)-(3).  The Board has taken that easement for the benefit of the Union without providing a mechanism for paying just compensation.  Therefore, it has violated the Fifth Amendment.  *See Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831 (1987) (government must pay just compensation when it takes an easement across private property).

Indeed, the access regulation's disregard of private property rights is so blatant that it also violates the Fourth Amendment's Seizure Clause.  That Clause protects "an individual's possessory interests in [] property" from "meaningful interference" by the government. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  It matters little whether this interference comes from direct government action or from private persons prompted by government acquiescence.  *Id.* Either way, the access regulation violates the Fourth Amendment by depriving Plaintiffs of their fundamental right to exclude strangers from their property.  *See Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978) ("One of the main rights attaching to property is the right to exclude others, and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." (citation omitted)); *Rawlings v. Kentucky*, ///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  448 U.S. 98, 112 (1980) (Blackmun, J., concurring) (arguing that the "'right to exclude' often may

2  be a principal determinant in the establishment of a legitimate Fourth Amendment interest").

3      The Board has moved to dismiss this action for failure to state a claim pursuant to Federal

4  Rule of Civil Procedure 12(b)(6).  However, as explained in detail below, the Board's arguments

5  in defense of the access rule are unpersuasive.  This Court should deny the Board's motion to

6  dismiss.

7  ### HISTORY OF THE ACCESS REGULATION

8      California enacted the Agricultural Labor Relations Act (the Act), Cal. Lab. Code § 1140,

9  *et seq.*, in 1975 to "'ensure peace in the agricultural fields'" and "'bring certainty . . . to a

10 presently unstable and potentially volatile condition in the state.'"  *ALRB v. Superior Court*

11 *(Pandol & Sons)*, 16 Cal. 3d 392, 398 (1976) (citation omitted).  The Act was the product of a

12 carefully crafted "compromise among the various interests."  *Id.* at 424 (Clark, J., dissenting)

13 (citation omitted).  As enacted, it did not include any provision mandating access for union

14 organizers.

15     Nevertheless, the newly created Board immediately promulgated an emergency access

16 regulation, which took effect just one day after the Act did.  *Id.* at 400 (majority opinion).

17 Agricultural businesses promptly challenged the regulation in California state court, claiming that

18 the regulation violated the Takings Clause and the Due Process Clause of the Fifth Amendment.

19 *Id.* at 409-11.  Two groups of plaintiffs prevailed in state trial courts, which temporarily enjoined

20 the Board from enforcing the access regulation.  *Id.* at 401.

21     In a 4-3 decision, the California Supreme Court vacated the injunctions.  *Id.* at 421.  The

22 Court believed that since " 'the inaccessibility of employees makes ineffective the reasonable

23 attempts by nonemployees to communicate with them through the usual channels, the right to

24 exclude from property [must be] required to yield.' "  *Id.* at 406 (citation omitted).  Therefore, the

25 California Supreme Court deemed it unnecessary to decide whether the particular facts of a union

26 protest violated the property owner's constitutional rights on a case-by-case basis.  *Id.* at 409.  It

27 instead adopted a blanket rule requiring access in every case, reasoning that the regulation does

28 not impinge upon private property rights because a rational relationship exists between the access

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  regulation and the purposes of the Act. *See id.* at 410.  As a result, the union access regulation has

2  remained virtually unchanged in California for over 40 years.

3                                              **ARGUMENT**

4                                                    **I**

5                                    ***PANDOL & SONS* DOES NOT**
                                **DICTATE THE OUTCOME OF THIS CASE**

6

7          The Board first argues that this Court should effectively defer to the California Supreme

8  Court's ruling in *Pandol & Sons* because the Plaintiffs have not presented a "compelling reason"

9  to revisit it.  Yet this Court needs no "compelling" reason to do so.  "Of course, federal courts are

10 not bound by state court decisions on matters of federal law."  *Key v. Wise*, 629 F.2d 1049, 1058

11 (5th Cir. 1980) (citing *Sola Electric Co. v. Jefferson Elec. Co.*, 317 U.S. 173 (1942)); *see also*

12 *Lucero v. Sears Holding Mgmt. Corp.*, No. 14-cv-1620, 2014 WL 6984220, at *4 (S.D. Cal. Dec. 2,

13 2014).  This Court owes no deference to the California Supreme Court and must decide the issue

14 on its own according to the correct federal constitutional standards.

15         Moreover, the United States Supreme Court's takings jurisprudence has significantly

16 advanced since the *Pandol & Sons* decision.  In 1976, the Court had yet to explicitly recognize that

17 a physical invasion of property constitutes a *per se* taking "without regard to the public interests

18 that it may serve," *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982), nor

19 had it made clear that the taking of an easement is still a *per se* physical taking, *Nollan*, 483 U.S.

20 at 831.  In fact, it had just retreated from holding that union protesters had a First Amendment right

21 to invade private property.  *See Amalgamated Food Employees Union Local 590 v. Logan Valley*

22 *Plaza, Inc.*, 391 U.S. 308, 325 (1968), *overruling recognized by Hudgens v. NLRB*, 424 U.S. 507,

23 517-18 (1976).  And in the interim the Court has reemphasized that "§ 7 [of the federal National

24 Labor Relations Act] simply does not protect nonemployee union organizers except in the rare case

25 where 'the inaccessibility of employees makes ineffective the reasonable attempts by

26 nonemployees to communicate with them through the usual channels.'"  *Lechmere, Inc. v. NLRB*,

27 502 U.S. 527, 537 (1992) (quoting *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112 (1956)).

28 All in all, courts and commentators have observed that the Supreme Court has been increasingly

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  protective of private property rights since 1976. *See Wash. Suburban Sanitary Comm'n v. Utilities,*

2  *Inc. of Md.*, 775 A.2d 1178, 1200 (Md. 2001) ("[T]he more recent decisions of the United States

3  Supreme Court have been particularly protective of property rights in the takings context."); 

4  Bernard H. Siegan, *Non-Zoning Is the Best Zoning*, 31 Cal. W. L. Rev. 127, 135 (1994) ("Since

5  1987, the U.S. Supreme Court has become much more protective of property rights than previously

6  and has substantially limited the land use powers of states and municipalities.").

7       The *Pandol & Sons* opinion is inconsistent with this trend.  The majority placed "property

8  rights" in scare quotes and easily concluded that they must yield "whenever" they conflict with the

9  employees' rights to learn about the benefits of union membership.  *Pandol & Sons*, 16 Cal. 3d at

10  406 (majority opinion).    That is in stark contrast with cases like *Loretto*, *Nollan*, and *Lucas v.*

11  *South Carolina Coastal Council*, 505 U.S. 1003 (1992), all of which recognized takings without

12  regard to economic impact or other factors.  *Pandol & Sons* also purported to apply the federal

13  *Babcock & Wilcox* rule, but as *Lechmere* demonstrates, it did so incorrectly.   Federal courts *do*

14  respect the property rights of employers whenever possible, permitting access only when the

15  employees live on an employer's property.  *Lechmere*, 502 U.S. at 539.  The California Supreme

16  Court did not do the same.[1]

17       This Court should certainly not give binding effect to the California Supreme Court's

18  decision, nor should it afford the majority opinion any deference.  Instead, the Court should

19  evaluate the access regulation according to well-established property rights principles that have

20  been articulated since *Pandol & Sons*.  Under these principles, this Court should agree with the

21  *Pandol & Sons* dissent that "the regulation constitutes an unwarranted infringement on

22  constitutionally protected property rights."  *Pandol & Sons*, 16 Cal. 3d at 421 (Clark, J.,

23  dissenting).

24

25  [1] Not only has the law changed since the regulation was upheld, the facts on the ground have
changed as well.  There are now myriad other ways to reach workers, including social media,

26  cellular phones, and e-mail. Even assuming workers lack access to these technologies, the workers
do not live on site and are accessible to the Union at any time other than when they are at work.

27  For example, Cedar Point houses its workers in hotels in Klamath Falls, Oregon, and Fowler's
employees generally live in their own housing. Compl. ¶¶ 27, 37. The Union does not need to

28  invade private property to reach these workers.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111  FAX (916) 419-7747

## II

### THE UNION ACCESS REGULATION VIOLATES THE TAKINGS CLAUSE[2]

The right to exclude unwanted persons from private property "has traditionally been considered one of the most treasured strands in an owner's bundle of property rights." *Loretto*, 458 U.S. at 435. That is why the Supreme Court has recognized that deprivation of that right without compensation violates the Fifth Amendment, regardless of the scope of the intrusion. *Id.* at 434-35. It follows that a government requirement that a property owner recognize an easement across his property for the benefit of third parties is plainly unconstitutional. *Nollan*, 483 U.S. at 831.

The Board does not dispute that the access regulation grants an easement. Instead, it argues that the easement should not be treated as a *per se* taking because it is not a "permanent physical occupation" of property. Motion to Dismiss at 6-8. In essence, the Board argues that the easement is "temporary" because union organizers do not have around the clock access to private property. That is incorrect. Despite time, place, and manner restrictions in the regulation, union organizers are granted the right to enter private property for 120 days each year as long as the regulation is in effect. Plaintiffs and other California agricultural businesses must surrender their right to exclude trespassers permanently, subject to the whims of the union.

An easement is no less a property right just because it cannot be utilized at all times. The Supreme Court has consistently held that similar access easements are takings without consulting other factors. For example, in *United States v. Causby*, 328 U.S. 256 (1946), the Court said that periodic low-altitude overflights amounted to an easement across private property even though they did not render the property uninhabitable. *Id.* at 261-63, 67. And in *Nollan*, the Court stated unequivocally that "[h]ad California simply required the Nollans to make an easement across their

---

[2] Plaintiffs recognize that this Court held they were unlikely to succeed on the merits of their Fifth Amendment argument in last month's preliminary injunction decision. *See Cedar Point Nursery v. Gould*, 1:16-cv-00185, 2016 WL 1559271, at *4-6 (E.D. Cal. Apr. 18, 2016). To the extent this Court finds that it is bound by the law of the case doctrine to reject Plaintiffs' takings argument at this stage, *see Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc), Plaintiffs present the argument in order to preserve it for appeal.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

Opp. to Mot. to Dismiss Complaint
No. 1:16-cv-00185-LJO-BAM                - 5 -

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1   beachfront available to the public on a permanent basis in order to increase public access to the

2   beach, . . . we have no doubt there would have been a taking." *Nollan*, 483 U.S. at 831; *see also*

3   *Evers v. Custer Cnty.*, 745 F.2d 1196, 1201-02 (9th Cir. 1984) ("The Supreme Court held that the

4   government could not create a public easement, 'result[ing] in an actual physical invasion of the

5   privately owned [property],' without exercising its power of eminent domain and paying just

6   compensation." (citation omitted) (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 180

7   (1979))).

8           There is no relevant difference between the easement in this case and a "permanent" one.

9   The Supreme Court implicitly recognized this in *Causby* when it found the distinction between a

10   temporary and permanent easement relevant only to the amount of compensation. *Causby*, 328

11   U.S. at 268 ("Since on this record it is not clear whether the easement taken is a permanent or a

12   temporary one, it would be premature for us to consider whether the amount of the award made

13   by the Court of Claims was proper."). *Nollan* is another example; it makes little sense to say that

14   an easement is temporary simply because it cannot be used throughout the year or for all hours of

15   the day. Otherwise, the Coastal Commission could avoid paying compensation for easements by

16   restricting their use to the daylight hours or the summer months. Those easements would still be

17   permanent, because they would continue in perpetuity unless the Commission relinquished them.[3]

18           A recent case out of Federal Circuit, *Otay Mesa Property, L.P. v. United States*, 670 F.3d

19   1358 (Fed. Cir. 2012), is illustrative. There, the court held that the imposition of an easement to

20   "install, maintain, and service sensors" on Otay Mesa's property was a *per se* taking. *Id.* at 1365.

21   Specifically relevant here, it rejected the argument that an easement is "temporary" just because

22   it "ends on occurrence of a specified event." *Id.* at 1364. Instead, in temporary physical taking

23   cases, "the takings at issue usually have specific end dates by the time just compensation is

24

25   [3] Even if the easement were "temporary," that would not absolve the Board from liability. Temporary easements are routinely condemned through eminent domain. *See, e.g.*, *Sacramento Area Flood Control Agency, Inc. v. Dhaliwal*, 236 Cal. App. 4th 1315, 1320, 1326 (2015)

26   (affirming a jury award of $4,000 in just compensation for condemnation of a "temporary construction easement"); *Kern River Gas Transmission Co. v. Clark Cnty.*, 757 F. Supp. 1110 (D.

27   Nev. 1990) (eminent domain proceeding to acquire a "temporary easement"). If the government must use its power of eminent domain to take an easement, then doing so without a mechanism for

28   compensation violates the Fifth Amendment.

awarded." *Id.* at 1365.  The difference between a temporary and a permanent easement is not the scope of the easement, but the nature of its termination.

Here, the easement granted to union organizers by the access regulation has no termination date. It ceases to exist only if the Board repeals the regulation.  *Cf. id.* at 1367 ("[T]he government has been held to have permanently taken property, despite the fact that '[a]ll takings are "temporary," in the sense that the government can always change its mind at a later time.' " (quoting *Hendler v. United States*, 952 F.2d 1364, 1376 (Fed. Cir. 1991))).  It is therefore as permanent as an easement can be, even though the text of the regulation limits its scope.  The Board cannot evade liability simply because the easement does not permit ongoing access 365 days per year.

Nor does *PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980), save the regulation. In *PruneYard*, the Court held that "a law limiting a property owner's right to exclude certain speakers from an already publicly accessible shopping center did not take the owner's property." *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2429 (2015) (discussing *PruneYard*).  But *PruneYard* does not extend as far as the Board would have it.  In *Nollan*, the Court rejected a similar argument, distinguishing *PruneYard* because the shopping center owner had chosen to open the property to the public, while the Nollans had not.  *See Nollan*, 483 U.S. at 832 n.1 ("The holding of [*PruneYard*] is not inconsistent with this analysis, since there the owner had already opened his property to the general public . . . ."); *but see id.* at 854-55 (Brennan, J., dissenting) (arguing that *PruneYard* prevents takings liability for the easement in *Nollan*).[4]  Like in *Nollan*, the easement here is over quintessentially private property.  Its effect would be to transform the property from a private business to a free-for-all for union protesters.  *PruneYard* does not sanction this result.

In summary, the access regulation violates the Fifth Amendment because it commandeers an uncompensated easement across agricultural property for the benefit of union organizers.  The

---

[4]  California courts have also limited the scope of the *PruneYard* rule to large public accommodations for similar reasons.  *See Planned Parenthood v. Wilson*, 234 Cal. App. 3d 1662, 1670 (1991) ("[S]maller businesses or commercial establishments which do not assume this societal role by public invitation and dedication of private property should not fall within the scope of the *Robins* rule.").

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111  FAX (916) 419-7747

1   regulation gives organizers the right to enter private property for 120 days per year—a right they

2   use to conduct disruptive protests that directly harm agricultural employers.  The Takings Clause

3   does not permit the government to deprive a property owner of his right to exclude without

4   providing a mechanism for compensation.  Therefore, the regulation is unconstitutional.  The

5   Board's motion to dismiss the Fifth Amendment claim should be denied.[5]

6                                      **III**

7                          **THE ACCESS REGULATION**
                    **EFFECTS AN UNCONSTITUTIONAL SEIZURE**

8

9           Once again in the Fourth Amendment claim, the Board concedes a central premise of

10  Plaintiffs' argument.  It does not dispute that the regulation effects a seizure of property.  The

11  Board instead argues that the seizure is reasonable because Plaintiffs' interests are outweighed by

12  the "important policy" stated in the access regulation itself—safeguarding the rights of agricultural

13  employees to freedom of association, self-organization, and collective bargaining.  *See Soldal v.*

14  *Cook Cnty.*, 506 U.S. 56, 71 (1992) (the reasonableness determination involves "careful balancing

15  of governmental and private interests").

16          The Board is wrong.  As Plaintiffs argued in their preliminary injunction motion, this case

17  is analogous to *Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006).  There, the Fourth

18  Circuit recognized that a government map allowing tourists to cut across the plaintiff's private land

19  created a valid Fourth Amendment claim.  *Id.* at 488-89.  Here, just as in *Presley*, the government

20  is commandeering an easement on Plaintiffs' property for the benefit of third parties.  And here,

21  just as in *Presley*, the fact that this intrusion on property rights is "limited" in some aspects is

22  ///

23

24  [5] The Board argues in a footnote that Plaintiffs' takings claims are unripe under *Williamson County*
    *Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), because
25  of a pending dispute between the Union and Cedar Point that is currently pending before the Board.
    This Court held Plaintiffs' claims were ripe in the context of the preliminary injunction decision.
26  *Cedar Point Nursery*, 2016 WL 1559271, at *3-4.  And in any event, the Board proceedings have
    nothing to do with the dispute in this case over the constitutionality of the access rule, which will
27  continue to apply to Plaintiffs and all agricultural businesses until it is repealed.  Cedar Point is
    arguing before the Board that the Union violated the regulation, not that the regulation does not
28  apply.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1    irrelevant to the constitutional analysis.  *See id.* at 482-83 (police "responded regularly" to eject

2    unwanted parties from the property).

3        If anything, government interference with Plaintiffs' property in this case is even more

4    flagrant.  In *Presley*, the property owners could at least call on law enforcement to eject unwanted

5    third parties.  *Id.*  By contrast, any attempt by the property owners here to take back control of their

6    own property would subject them to further charges under the access regulation.  *See* Cal. Code

7    Regs. tit. 8, § 20900(e)(5)(C).  That is no accident.  Because the ultimate objective of the access

8    regulation is to allow union organizers onto private property, government interference with private

9    property is even greater here.  *See Jacobsen*, 466 U.S. at 113 (acts of private persons implicate the

10   Fourth Amendment if made with "participation or knowledge of any government official" (quoting

11   *Walter v. United States*, 447 U.S. 649, 662 (1980))).

12       More importantly, these intrusions on private property rights do nothing to advance the

13   regulation's stated interests.[6]  First, freedom of association "presupposes a freedom not to

14   associate."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984).  While union organizers may access

15   workers whenever they are not at work, workers who do not want to join a union lack meaningful

16   opportunity to avoid union organizers while they work.  The Board has provided no reason why

17   this Court should advance the freedom of association by preserving, rather than invalidating, the

18   access regulation.

19       As to the remaining interests, the Board does not explain how depriving businesses of their

20   right to exclude non-employees from their property furthers the Board's interest in promoting

21   self-organization and collective bargaining.  It is not at all clear why the union organizers must be

22   on the employer's property in order to effectively organize employees.  "So long as nonemployee

23   union organizers have reasonable access to employees outside an employer's property, the

24   ///

---

25   [6] In deciding Plaintiffs' motion for a preliminary injunction, the Court requested supplemental

26   briefing on this issue.  If there is an issue of disputed fact regarding the balancing of these interests,
     judgment as a matter of law at this stage is inappropriate.  *See Mui Ho v. Toyota Motor Corp.*, 931

27   F. Supp. 2d 987, 998 (N.D. Cal. 2013) (whether the possibility of headlamp failure after years of
     use is an "unreasonable safety risk" is a question of fact inappropriate for resolution at the

28   pleadings stage).

1   requisite accommodation has taken place." *Lechmere*, 502 U.S. at 538.[7]  The access regulation

2   serves no purpose that must be accomplished on the employer's property.

3         While it may be convenient for a State to commandeer employers' property and create a

4   forum for union organizers with a captive audience, "inconvenience is a cost which the Fourth

5   Amendment was intended to impose."  Lewis R. Katz, *In Search of a Fourth Amendment for the*

6   *Twenty-First Century*, 65 Ind. L.J. 549, 577 (1990).   Plaintiffs have stated a valid Fourth

7   Amendment claim and the Board's motion to dismiss that claim should be denied.

8   **CONCLUSION**

9         For the foregoing reasons, the Board's motion to dismiss Plaintiffs' claims should be

10  denied.

11        DATED:  May 10, 2016.

12      Respectfully submitted,

13      DAMIEN M. SCHIFF
        JOSHUA P. THOMPSON

14      CHRISTOPHER M. KIESER
        WENCONG FA

15      HOWARD A. SAGASER
        IAN B. WIELAND

16

17      By ____/s/ Christopher M. Kieser_____

18          CHRISTOPHER M. KIESER

19      Attorneys for Plaintiffs

20

21

22

23

24

25

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

---

26  [7] Plaintiffs have pleaded sufficient facts to permit the Court to infer that Plaintiffs' employees are available to union organizers outside of the workplace.  For example, Plaintiffs alleged that both

27  Fowler's and Cedar Point's employees do not live on the premises.  Compl. ¶¶ 27, 37.  Since the employees must leave the premises at the end of the workday, union organizers do not have to

28  invade private property to speak to them.