KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
R. MATTHEW WISE, State Bar No. 238485
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 323-8549
Fax: (916) 324-3385
E-mail: Matthew.Wise@doj.ca.gov
*Attorneys for Defendants William B. Gould IV, Genevieve Shiroma, Cathryn Rivera-Hernandez, and J. Antonio Barbosa*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CEDAR POINT NURSERY and FOWLER PACKING CO.,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**WILLIAM B. GOULD IV, GENEVIEVE SHIROMA, CATHRYN RIVERA-HERNANDEZ, AND J. ANTONIO BARBOSA, members of the Agricultural Labor Relations Board in their official capacities,**<br><br>Defendants. | 1:16-cv-00185-LJO-BAM<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: May 25, 2016<br>Time: 8:30 a.m.<br>Dept: Courtroom 4, 7th Floor<br>Judge: Lawrence O'Neill<br><br>Action Filed: February 16, 2016<br><br>[Fed. R. Civ. P. 78; L.R. 230] |

**TABLE OF CONTENTS**

**Page**

Introduction ........ 1
Argument ........ 2
I. Plaintiffs Cannot Prevail on Their Fifth Amendment Claim Because the Access Regulation Is a Constitutional Regulatory Restriction ........ 2
II. Plaintiffs Cannot Prevail on Their Fourth Amendment Claim Because They Did Not Suffer a Meaningful Interference with Their Possessory Interests and the Access Regulation Can Be Reasonably Applied to Them ........ 3
Conclusion ........ 8

i

Defs.' Reply in Support of Mot. to Dismiss Pls.' Compl. (1:16-cv-00185-LJO-BAM)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Costas-Elena v. Mun. of San Juan*
714 F. Supp. 2d 263 (D. Puerto Rico 2010) .......... 5

*Eastex v. NLRB*
437 U.S. 556 (1978) .......... 8

*Freeman v. City of Dallas*
242 F.3d 642 (5th Cir. 2001) .......... 5

*Gonzalez v. Arizona*
677 F.3d 383 (9th Cir. 2012) .......... 2

*Lechmere, Inc. v. NLRB*
502 U.S. 527 (1992) .......... 6

*NLRB v. Magnavox Co.*
415 U.S. 322 (1974) .......... 8

*Nollan v. Cal. Coastal Comm'n*
483 U.S. 825 (1987) .......... 3

*Otay Mesa Property, L.P. v. United States*
670 F.3d 1358 (Fed. Cir. 2012) .......... 3

*Penn Central Transp. Co. v. New York City*
438 U.S. 104 (1978) .......... 1, 3

*Presley v. City of Charlottesville*
464 F.3d 480 (4th Cir. 2006) .......... 4, 5

*Schwarz v. United States*
234 F.3d 428 (9th Cir. 2000) .......... 7

*Soldal v. Cook County*
506 U.S. 56 (1992) .......... 1, 4

*United States v. Causby*
328 U.S. 256 (1946) .......... 2, 3

*United States v. Jacobsen*
466 U.S. 109 (1984) .......... 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**OTHER AUTHORITIES**

California Code of Regulations, Title 8
§ 20900 .......... 1, 5
§ 20900(b) .......... 6
§ 20900(c) .......... 2, 6
§ 20900(d) .......... 2, 6
§ 20900(e) .......... 1, 4
§ 20900(e)(4)(C) .......... 5
§ 20900(e)(5)(A) .......... 5
§ 20900(e)(5)(B) .......... 5

iii
Defs.' Reply in Support of Mot. to Dismiss Pls.' Compl. (1:16-cv-00185-LJO-BAM)

**INTRODUCTION**

Defendant Agricultural Labor Relations Board members have moved to dismiss Plaintiffs' complaint, which alleges that a Board regulation is unconstitutional as applied to Plaintiffs Cedar Point Nursery and Fowler Packing Company. That regulation, which provides union organizers qualified access to agricultural worksites to meet with employees and solicit their support, was upheld forty years ago by the California Supreme Court, and continues to be constitutional today.

The Court has already rejected Plaintiffs' Fifth Amendment Takings Clause claim, and Plaintiffs have provided no reason for the Court to reverse course here. Plaintiffs cling exclusively to their erroneous theory that the access regulation is a *per se* taking, without even analyzing this regulatory restriction under the correct legal standard—the *Penn Central* balancing test. *See Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). Having failed to apply, must less show, an illegal taking under the *Penn Central* factors—the character of the government action, the economic impact of the regulation, and the regulation's interference with reasonable investment-backed expectations—Plaintiffs cannot prevail on their Fifth Amendment claim.

Plaintiffs likewise cannot state a Fourth Amendment Seizure Clause claim, because (1) they have not suffered a meaningful interference with their possessory interests, and (2) a "careful balancing of governmental and private interests" allows for the access regulation's reasonable application to them. *See Soldal v. Cook County*, 506 U.S. 56, 71 (1992).

First, the regulation's time, place, and manner restrictions significantly limit union access to the Plaintiffs' worksites, and ensure that any interference with Plaintiffs' possessory interests is not meaningful.

Second, the government's substantial interest in continuing to enforce this regulation outweighs Plaintiffs' narrow property interests, particularly because the regulation's time, place, and manner restrictions minimize any interference with Plaintiffs' possessory interests. *See* Cal. Code Regs. tit. 8, § 20900(e). The regulation was enacted to carry out the State of California's policy "to encourage and protect the right of agricultural employees to full freedom of association, self-organization, and designation of representatives of their own choosing." Cal.

Code Regs. tit. 8, § 20900 (citing Cal. Labor Code § 1140.2). The Board designed the regulation to apply universally to all agricultural employers in the state, rather than on a case-by-case basis, largely because alternative channels of effective communication that are typical in industrial settings do not exist or are inadequate in the agricultural context. Cal. Code Regs. tit. 8, § 20900(c), (d). Because Plaintiffs cannot show that they should be exempted from the regulation's reach, the regulation can be reasonably applied to them.

In short, Plaintiffs' complaint should be dismissed, and leave to amend should be denied, because Plaintiffs have failed to and cannot state a claim for relief.

## ARGUMENT

### I. PLAINTIFFS CANNOT PREVAIL ON THEIR FIFTH AMENDMENT CLAIM BECAUSE THE ACCESS REGULATION IS A CONSTITUTIONAL REGULATORY RESTRICTION

In its order denying in part Plaintiffs' motion for preliminary injunction, the Court weighed Plaintiffs' Fifth Amendment claim and rejected their theory that the access regulation allows a *per se* or categorical taking of Plaintiffs' property. Mem. Decision and Order at 1, 10, 13, ECF No. 13. Plaintiffs' opposition to the motion to dismiss provides no basis to find differently here.[1]

Plaintiffs argue, in particular, that the regulation allows an unconstitutional categorical taking because it requires "that a property owner recognize an easement across his property for the benefit of third parties." Opp'n at 5, ECF No. 16. Yet as this Court observed, though "the creation of an easement *may* amount to a taking, [Plaintiffs] go too far by equating this action with a categorical taking." Mem. Decision and Order at 7 (emphasis in original).

Plaintiffs suggest, for example, that *United States v. Causby*, 328 U.S. 256 (1946) stands for the principle that any easement is a permanent, categorical taking. There, the Supreme Court found that airplane flights over private property "are not a taking, unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land." *Id.* at 266. Destruction of all uses of the land, like the flooding of property, would be a permanent

[1] Indeed, as Plaintiffs acknowledge, based on the law of the case doctrine, "a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc).

taking. *Id.* at 261-62, n.6. But the temporary access granted union organizers here in no way resembles the "complete dominion and control over the surface of the land" in *Causby*, and thus, is not a taking. *See id.* at 262.

Plaintiffs similarly argue that the access regulation is like the easement across beachfront property "available to the public on a permanent basis" in *Nollan v. California Coastal Commission*, 483 U.S. 825, 831 (1987). Opp'n at 5-6. As the Court stated in its recent order, this case is distinguishable from *Nollan* because Plaintiffs "do not show that [the access regulation] would allow the public to access their property in a permanent and continuous manner for whatever reason, as in *Nollan*." Mem. Decision and Order at 9 (emphasis in original).

Plaintiffs also contend that the "blanket easement to install, maintain, and service sensors" on private property in *Otay Mesa Property, L.P. v. United States*, 670 F.3d 1358 (Fed. Cir. 2012) is no different than the access regulation here because neither has a specific termination date. Opp'n at 6-7. The Court has rejected this argument, as well; under Plaintiffs' view, "any law providing any measure of access [would be] a permanent taking." Mem. Decision and Order at 10 ("[T]he fact that the Access Regulation is itself a permanent law does not mean that its application to the Plaintiffs will be permanent").

Thus, having failed to show that a *per se* taking occurred here, Plaintiffs must demonstrate that balancing the *Penn Central* factors, the access regulation violates the Takings Clause. Perhaps because they recognize that they cannot meet this heavy burden, Plaintiffs have not even attempted to argue that the access regulation is unconstitutional under the *Penn Central* test. Plaintiffs have not stated a viable claim under the Fifth Amendment.

## II. PLAINTIFFS CANNOT PREVAIL ON THEIR FOURTH AMENDMENT CLAIM BECAUSE THEY DID NOT SUFFER A MEANINGFUL INTERFERENCE WITH THEIR POSSESSORY INTERESTS AND THE ACCESS REGULATION CAN BE REASONABLY APPLIED TO THEM

As to their Fourth Amendment claim, Plaintiffs must show that the access regulation has been or is likely to be applied to them to create an unconstitutional seizure, such that (1) they have suffered a "meaningful interference" with their possessory interests in property, *i.e.*, a seizure, *see United States v. Jacobsen*, 466 U.S. 109, 113 (1984), and (2) based on a "careful

balancing of governmental and private interests," the alleged seizure was unreasonable, *see Soldal*, 506 U.S. at 71. Plaintiffs can show neither.

The regulation's time, place, and manner restrictions, which significantly limit union access to the Plaintiffs' worksites, ensure that any interference with Plaintiffs' possessory interests is minimal.[2] *See* Mot. at 8-9 (citing Cal. Code Regs. tit. 8, § 20900(e)), ECF No. 11. And Plaintiffs' possessory interests may not even extend to the "open fields" where the access regulation is operable. *See Presley v. City of Charlottesville*, 464 F.3d 480, 484 n.3 (4th Cir. 2006) (citing *Oliver v. United States*, 466 U.S. 170, 181 (1984) ("We conclude, from the text of the Fourth Amendment and from the historical and contemporary understanding of its purposes, that an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers")).

Plaintiffs reprise their argument that "[h]ere, just as in *Presley*, the government is commandeering an easement on Plaintiffs' property for the benefit of third parties" and that "[b]ecause the ultimate objective of the access regulation is to allow union organizers onto private property, government interference with private property is even greater here." Opp'n at 8-9. Yet Plaintiffs again ignore the regulation's significant time, place, and manner restrictions. *See* Cal. Code Regs., tit. 8, § 20900(e). The property owner in *Presley* alleged that she had been deprived of the use of her property "due to the regular presence of a veritable army of trespassers who freely and regularly traverse her yard, littering, making noise, damaging her land, and occasionally even camping overnight." *Presley*, 464 F.3d at 487. These considerable intrusions in *Presley* contrast sharply from the access regulation's authorization of brief, unobtrusive lunch hour visits to Plaintiffs' worksites from union organizers.

Plaintiffs further suggest that they have suffered a more meaningful interference here because unlike the property owner in *Presley*, they purportedly cannot call the police to evict unwanted third parties. But it is not as if Plaintiffs are without a remedy to address unruly

[2] Plaintiffs maintain that "the Board concedes a central premise of Plaintiffs' argument"—that the regulation "effects a seizure of property." Opp'n at 8. But the Defendants have never conceded that a seizure occurred here.

behavior on their property. The regulation explicitly prohibits "conduct disruptive of the employer's property or agricultural operations." Cal. Code Regs. tit. 8, § 20900(e)(4)(C). The regulation also protects employers from this prohibited conduct by barring any organizer that violates this provision from taking access, and by recognizing that such violations may constitute an unfair labor practice. Cal. Code Regs. tit. 8, § 20900(e)(5)(A), (B). And the regulation does not stop Plaintiffs from contacting law enforcement to address illegal conduct on their property. Complaints of union actions proscribed by the regulation do not provide a basis to find the regulation unconstitutional as applied, particularly when Plaintiffs have not exercised the legal remedies available to them to address the alleged violations. It would be inappropriate to find that Defendant Board members unconstitutionally applied the access regulation to Plaintiffs based on a dispute between Plaintiffs and the United Farm Workers of America (UFW) that has not been resolved by the Board.

Even if the interference with Plaintiffs' possessory interests is deemed to be meaningful, Plaintiffs must meet a heavy burden to show that the regulation was not reasonably applied to them. *See Freeman v. City of Dallas*, 242 F.3d 642, 654 (5th Cir. 2001) ("In the context of reviewing civil administrative and regulatory enforcement of laws enacted pursuant to the traditional police power, Fourth Amendment reasonableness means non-arbitrariness"). This is particularly true when, as here, the interference is "slight, limited . . . in time, place, and purpose." *See Costas-Elena v. Mun. of San Juan*, 714 F. Supp. 2d 263 (D. Puerto Rico 2010). Plaintiffs have not alleged that the Board has arbitrarily applied the access regulation to them, and cannot meet their burden here.

*Presley* starkly contrasts with this case in another respect—the governmental interest in publishing a trail map for the public is relatively insignificant compared to the State's policy to safeguard the rights of agricultural employees to freedom of association, self-organization, and collective bargaining. *See* Cal. Code Regs. tit. 8, § 20900. The regulation is the Board's primary means of implementing this important policy. Plaintiffs cannot state a viable claim without asserting sufficient facts to show that their alleged property interests outweigh the Board's interest in the access regulation's enforcement.

The Board made this strong interest clear in the regulation itself. The Board recognized that in the agricultural setting, in contrast to the industrial setting, "unions seeking to organize . . . do not have available alternative channels of effective communication." Cal. Code Regs. tit. 8, § 20900(c). Because of the pervasive nature of this issue, the Board determined that "bringing certainty and a sense of fair play to a presently unstable and potentially volatile condition in the agricultural fields of California can best be served by the adoption of rules on access which provide clarity and predictability to all parties." Cal. Code Regs. tit. 8, § 20900(d). The Board's reasoning for adopting this regulation demonstrates that it engaged in the careful balancing of governmental and private interests required by the Fourth Amendment's reasonableness standard: "[u]nder such circumstances . . . a reasonable and just accommodation [must] be made between the right of unions to access and the legitimate property and business interests of the employer." Cal. Code Regs. tit. 8, § 20900(b).

Plaintiffs discount the governmental interest advanced by the regulation by suggesting that "[i]t is not at all clear why the union organizers must be on the employer's property in order to effectively organize employees." Opp'n at 9-10, citing *Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992). They further argue that they "have pleaded sufficient facts to permit the Court to infer that Plaintiffs' employees are available to union organizers outside of the workplace."[3] Opp'n at 10 n.7.

But employees need not be sequestered in "logging camps, mining camps, [or] mountain resort hotels," *see Lechmere*, 502 U.S. at 539-40, to be inaccessible. Instead, technological and linguistic barriers support the need for the regulation.

The Board's three public hearings in September 2015 confirmed that the challenges in communicating with agricultural employees that led to the access regulation's enactment remain today. Request for Judicial Notice [RJN], Ex. A [Board Memorandum, dated November 23, 2015] at 4 ("In general, despite 40 years of outreach efforts . . . today's farmworkers have little to no

[3] Plaintiffs also suggest that "workers who do not want to join a union lack meaningful opportunity to avoid union organizers while at work." Opp'n at 9, citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984). Yet the regulation does not compel agricultural employees to associate with anyone; if they so choose, the employees are free to ignore the union organizers.

knowledge about the [Agricultural Labor Relations Act] and the rights and protections this law affords them"), ECF No. 8.[4] Because a growing percentage of farmworkers are monolingual and cannot read or write their indigenous language, a language barrier significantly hinders the efforts of union organizers to communicate with farmworkers. *Id.* at 5, 30 (noting "the influx of a new generation of workers from more remote areas of Mexico whose native language is not Spanish, but one of the so-called indigenous languages, such as Mixteco, Zapotec, Triqui, Chatino, [or] Purepecha"). These conditions limit the effectiveness of traditional forms of communication, such as communication by cell phone, email, social media, radio, television, or billboard advertisement. *Id.*

For example, though cell phones are widely used on agricultural worksites, Internet access is limited primarily because purchasing a "smart" phone with a data plan "require[s] income that is not available to farmworkers who mainly devote their incomes to their living situations and to providing for their families both here and in Mexico." RJN, Ex. A at 10-11. Even if they had the means to purchase a smart phone, the majority of mestizo and indigenous farmworkers lack the literacy in both computer technology and Spanish to be able to communicate effectively by email or text message. *Id.* at 11-14. And even if these prerequisites were met, cell phone signal coverage in the rural areas where farmworkers live and work is spotty. *Id.* at 15. For these reasons, the Board concluded that cell phones do not provide an effective alternative means of communication with farmworkers.

Plaintiffs' counsel and others suggested at the hearings that farmworkers could also be reached through social media, radio, television, and billboard advertisements. RJN, Ex. A at 19. But largely for the reasons discussed above, these means of communication are no more effective than cell phones. Communication by social media requires a smart phone or computer, as well as technical and linguistic literacy. *Id.* at 19 n.36. Radio station signals are limited in the areas

[4] The Court need not accept as true allegations contradicted by judicially noticeable facts. *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Defendants renew their request for judicial notice of the Board's November 23, 2015 memorandum, previously filed as Exhibit A in support of Defendants' opposition to Plaintiffs' motion for preliminary injunction. *See* RJN, Ex. A, ECF No. 8.

where farmworkers live and work, and radio, television, and billboard advertisements cannot be broadcast in all of the numerous indigenous languages and dialects used by farmworkers. *Id.* at 19. Even if these advertisements were understood, they offer no opportunity for personal interaction between union organizers and farmworkers. *Id.*

Based on the hearing testimony and supporting evidence, it is clear that allowing for worksite access to farmworkers is critical to the Agricultural Labor Relations Act's mission to "ensure peace in the agricultural fields by guaranteeing justice for all agricultural workers and stability in labor relations." Agricultural Labor Relations Act of 1975, Cal.Stats. 1975, Third Extraordinary Session, c. 1, § 1, p. 4013. This conclusion supports the government's interest in continued enforcement of the access regulation and is consistent with the Supreme Court's observation that "[t]he place of work is . . . uniquely appropriate for dissemination of views concerning the bargaining representative and the various options open to the employees." *NLRB v. Magnavox Co.*, 415 U.S. 322, 325 (1974); *see also Eastex v. NLRB*, 437 U.S. 556, 574 (1978) (the workplace "is the one place where [employees] clearly share common interests and where they traditionally seek to persuade fellow workers in matters affecting their union organizational life and other matters related to their status as employees"). Because a careful balancing of the governmental and private interests favors Defendants, Plaintiffs cannot prevail on their Fourth Amendment claim.

**CONCLUSION**

For the reasons stated in the moving papers, and those stated herein, Defendants respectfully request that the Court dismiss all claims without leave to amend.

Dated: May 18, 2016

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

***/s/ R. Matthew Wise***

R. MATTHEW WISE
Deputy Attorney General
*Attorneys for Defendants William B. Gould IV, Genevieve Shiroma, Cathryn Rivera-Hernandez, and J. Antonio Barbosa*

SA2016100631
12262521.doc

9

Defs.' Reply in Support of Mot. to Dismiss Pls.' Compl. (1:16-cv-00185-LJO-BAM)

## CERTIFICATE OF SERVICE

Case Name: **Cedar Point Nursery v. William B. Gould IV, et al.** No. **1:16-cv-00185-LJO-BAM**

I hereby certify that on May 18, 2016, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 18, 2016, at Sacramento, California.

| Tracie L. Campbell | Tracie Campbell |
| --- | --- |
| Declarant | Signature |

SA2016100631
12268783.doc