# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDAR POINT NURSERY and FOWLER PACKING CO., <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM B. GOULD IV, *et al.*, <br><br> Defendants. | 1:16-cv-00185-LJO-BAM <br><br> MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS [Doc. 11] |

## I. INTRODUCTION

Plaintiffs Cedar Point Nursery and Fowler Packing Company ("Plaintiffs") allege that Cal. Code Regs. tit. 8, § 20900(e) (the "Access Regulation"), a regulation promulgated by California's Agricultural Labor Relations Board ("ALRB" or "the State") allowing union organizers access to worksites for limited periods of time, is unconstitutional as applied to them. Plaintiffs argue that the Access Regulation allows third parties to take their property without providing just compensation, in violation of the Fifth Amendment, and permits an unlawful seizure of their property rights, in violation of the Fourth Amendment.

## II. THE ACCESS REGULATION

In 1975, California enacted the Agricultural Labor Relations Act ("ALRA"). Cal. Lab. Code § 1140. The ALRA created the ALRB and vested its members with authority to make rules to carry out this policy. Cal. Lab. Code §§ 1141, 1144. The ALRB promulgated the Access Regulation in recognition that workers' abilities to exercise their organizational rights "depend[] in some measure on

the ability of employees to learn the advantages and disadvantages of organization from others." Cal. Code Regs. tit. 8, § 20900(b). The Access Regulation provides that "the rights of employees under [California] Labor Code Section 1152" include "the right of access by union organizers to the premises of an agricultural employer for the purpose of meeting and talking with employees and soliciting their support." Cal. Code Regs. tit. 8, § 20900(e). This right is subject to several constraints. For example, a labor organization must provide notice to the ALRB and the employer of its intent to appear onsite. § 20900(e)(1)(B). No organization may appear for more than four thirty-day periods in any calendar year. § 20900(e)(1)(A)-(B). Organizers may enter an employer's property "for a total period of one hour before the start of work and one hour after the completion of work" and for "a single period not to exceed one hour during the working day for the purpose of meeting and talking with employees during their lunch period." § 20900(e)(3). Access is limited to a certain number of organizers (depending on the number of employees) and organizers are not allowed to engage in "conduct disruptive of the employer's property or agricultural operations, including injury to crops or machinery or interference with the process of boarding buses." § 20900(e)(4). Organizers who violate these provisions may be barred from accessing employers' properties for organizing purposes. § 20900(e)(5).

### III. FACTUAL BACKGROUND

Plaintiff Cedar Point Nursery ("Cedar Point") is located in Dorris, California. Compl. for Declaratory and Injunctive Relief ("Compl."), Doc. 1, ¶ 8. Cedar Point employs more than 400 seasonal employees, who are housed off-site. *Id.* ¶¶ 26-27. Cedar Point alleges that United Farm Workers ("UFW") members entered their property at 5:00 A.M. on October 29, 2015, "without any prior notice of intent to access the property" and "disrupted work by moving through the trim sheds with bullhorns, distracting and intimidating workers." *Id.* ¶ 30. Sometime after this event, UFW served notice of their intent to take access. *Id.* ¶ 32. Cedar Point lodged a complaint against the UFW with the ALRB regarding UFW's failure to provide notice prior to the October 29 incident. *Id.* ¶ 34. The UFW has also filed a charge with the ALRB against Cedar Point, alleging that Cedar Point has committed unfair labor

practices. *Id.*

Plaintiff Fowler Packing Company ("Fowler") is a California corporation, headquartered in Fresno, California. *Id.* ¶ 9. Fowler describes itself as "one of the largest shippers in the fresh produce business." *Id.* Fowler's employees do not live on their property. *Id.* ¶ 37. The UFW brought charges before the ALRB against Fowler, based on alleged violations of the Access Regulation, in July 2015. *Id.* ¶ 38. It withdrew these charges in January 2016. *Id.* ¶ 39. Fowler alleges that, "[a]bsent the challenged regulation, Fowler would oppose union access and exercise its right to exclude trespassers from its property." *Id.*¶ 40.

Both companies allege they "have reason to believe that the access regulation will be applied against them in the future" and "the only proper and possible remedy . . . is declaratory and injunctive relief." *Id.* ¶ 57. They state that the Access Regulation should not apply to them because "such access is unnecessary given the alternative means of communication available [to union organizers]." *Id.* ¶ 64.

## IV. <u>PROCEDURAL HISTORY</u>

Plaintiffs filed their complaint against individual members of the ALRB on February 10, 2016. Compl. at 11. Plaintiffs argue that the Access Regulation amounts to both a "taking" in violation of the Fifth Amendment of the Constitution, and an unlawful seizure of their private property in violation of the Fourth Amendment. *Id.* ¶¶ 58, 64. Plaintiffs seek a declaratory judgment stating that the Access Regulation is unconstitutional as applied to them and an order enjoining the ALRB from enforcing the regulation against them. *Id.* at 10:16-19.

On February 16, 2016, Plaintiffs filed a motion for preliminary injunction seeking to enjoin the ALRB from enforcing the Access Regulation on their properties. On April 18, 2016, the Court denied their motion as to their Fifth Amendment claims and requested supplemental briefing on their Fourth Amendment claims. Mem. Decision and Order ("April 18 Order"), Doc. 13. On May 26, 2016 the Court denied Plaintiffs' motion in its entirety. Mem. Decision and Order ("May 26 Order"), Doc. 19.

Now pending before the Court is Defendants' motion to dismiss Plaintiffs' claims pursuant to

Rule 12(b)(6). Defs.' Not. Of Mot. and Mot. to Dismiss ("MTD"), Doc. 11. Plaintiffs and Defendants filed their opposition and reply in a timely manner. Pls.' Opp'n to Defs.' Mot. to Dismiss ("Opposition"); Defs.' Reply in Supp. of Mot. to Dismiss ("Reply"), Doc. 17. The Court vacated the hearing set for the matter pursuant to Local Rule 230(g). Doc. 18.

## V. **STANDARD OF DECISION**

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing]

to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the Complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## VI. ANALYSIS

### A.  Fifth Amendment Claims

#### 1.  Ripeness

In a footnote Defendants claim that Plaintiffs' takings claims should be dismissed because they are unripe on the ground that Plaintiffs have not sought and been denied compensation by the State of California. MTD at 9, n. 3. Based on the record that existed at the time, the Court rejected this theory in its April 15, 2015 Order, on the ground that California Supreme Court jurisprudence forecloses the relief sought and therefore recourse to the state courts would be futile. Because Defendants do not make any new substantive arguments as to this claim, the Court will not revisit its decision.

#### 2.  Whether Defendants Allege a Plausible Takings Claim

Plaintiffs allege that the Access Regulation creates an easement on their property and therefore effects a Fifth Amendment taking. Compl. ¶ 58. Defendants argue that this claim should be dismissed because the Access Regulation does not impinge on Plaintiffs' property rights. MTD at 5-9. As the parties both recognize, the Court found that Plaintiffs did not demonstrate in their request for preliminary injunction that they were likely to succeed on their Fifth Amendment claims. April 15 Order at 14-15. But a Court's conclusions as to injunctive relief do not determine the outcome of an analysis under Fed. R. Civ. P. 12(b)(6).

5

Plaintiffs' arguments in opposition to Defendants' motion to dismiss are nearly identical to those advanced in support of their motion for a preliminary injunction. They claim that the Access Regulation is categorically unconstitutional as matter of law. Opposition at 5. For the reasons discussed in its previous order, this Court disagrees that the Access Regulation effects a categorical taking on its face. April 18 Order at 10.  Nor do Plaintiffs allege facts that suggest the Access Regulation will amount to a permanent, physical intrusion based on facts specific to their case. The Court, therefore, cannot find that Plaintiffs have stated a viable as-applied categorical takings claim.

Alternatively, Plaintiffs can state a takings claim if they can show that the Access Regulation is "so onerous that its effect is tantamount to a direct appropriation or ouster" according to the "standards set forth in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978)." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537-38 (2005). These factors include "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations," and "the character of the governmental action." *Penn Central*, 438 U.S. at 124. Under *Penn Central*, courts examine a regulation's "character" and "economic impact," asking whether the action goes beyond "adjusting the benefits and burdens of economic life to promote the common good" and whether it "interfere[s] with distinct investment-backed expectations." *Id.* "That multi-factor test balances the government's manifest need to pass laws and regulations 'adversely affect[ing] ... economic values, with [the] longstanding recognition that some regulation 'goes too far.'" *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2604 (2013) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).

Plaintiffs did not put forth arguments along these lines in support of its motion for preliminary injunction, thus the Court found no likelihood of success under *Penn Central*. On a motion to dismiss, however, the standard is different, and a court must evaluate whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiffs, however, fail to allege facts in their pleadings that suggest

6

that the Access Regulation has had *any negative economic impact on them at all.*[1] Thus, they have not provided a basis from which this Court might plausibly conclude that the economic burden they shoulder is unjust. For these reasons, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Fifth Amendment claims. Plaintiffs are granted leave to amend.

**B.      Fourth Amendment Claims**

Plaintiffs allege that the Access Regulation effects a seizure of their property because it grants "an access easement to union organizers" that is unnecessary "given the alternative means of communication available." Compl. ¶ 64. As discussed in the Court's previous two orders, whether access by organizers effects a Fourth Amendment seizure is a threshold issue. *Jensen v. Cty. of Sonoma*, 444 F. App'x 156, 159 (9th Cir. 2011) (no Fourth Amendment violation because order requiring property owners to schedule a home inspection did not effect a seizure). "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

When an owner is not completely dispossessed of his property, but only suffers a trespass, it is not necessarily the case that interference causes a seizure. The Fourth Circuit found that a "constant physical occupation" of a plaintiff's property (which resulted from a city's advertisement of a hiking trail through her backyard) "certainly constitute[d] a 'meaningful interference' with [her] possessory interests." *Presley v. City Of Charlottesville*, 464 F.3d 480, 487 (4th Cir. 2006). Generally, however, "[t]he existence of a physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated . . . for an actual trespass is neither necessary nor sufficient to establish a constitutional violation." *United States v. Karo*, 468 U.S. 705, 712-13 (1984). For example, in *Karo*, the Supreme Court considered whether "the installation of a beeper in a container of chemicals with the

---

[1] Plaintiffs do assert negative impacts with regards to a protest that occurred on Cedar Point's property in 2015. Compl. ¶¶ 30-31. Plaintiffs, however, have also asserted that this conduct violated the Access Regulation. Compl. ¶ 34; Opposition at 8, n. 5. If the 2015 event occurred in violation of the Access Regulation, conduct associated with it cannot be viewed as evidence that implementation of the law is unconstitutional.

consent of the original owner constitutes a search or seizure within the meaning of the Fourth Amendment when the container is delivered to a buyer having no knowledge of the presence of the beeper." *Id.* at 707. While acknowledging that placing the beeper in the car may have been a "technical trespass on the space occupied by the beeper," the Court found that no seizure occurred because "it cannot be said that anyone's possessory interest was interfered with in a meaningful way." *Id.*

Plaintiffs argue that the Access Regulation's interference with their interests is substantial because it deprives them of "their right to exclude non-employees from their property." Opposition at 9. However, they point to no law that suggests that such time and manner-limited access would be characterized as a meaningful interference. While Plaintiffs claim that their case is analogous to *Presley*, the facts alleged do not bear this out because they do not suggest that the Access Regulations may or has permitted them to suffer a "constant physical occupation." *Presley*, 464 F.3d at 487. Nor have Plaintiffs alleged that the ALRB has applied the Access Regulation in a manner that has restricted Plaintiffs' freedom to use their property. *Jacobsen*, 466 U.S. at 114, n. 5. In fact, Plaintiffs do not allege that the ALRB has used the Access Regulation to force them to allow *any* organizers on their properties to date. As discussed in the May 26 Order, the one example Plaintiffs provide of union organizers accessing their property is alleged to have occurred in violation of the Access Regulation. Compl. ¶ 34 (describing that the Union's actions "violated the access regulation by taking access to Cedar Point's property without providing proper notice."). In addition, Plaintiffs allege Cedar Point has filed a charge against the Union with the ALRB related to that event. *Id*. As previously explained: "Plaintiffs cannot have it both ways. If the 2015 event occurred in violation of the Access Regulation, conduct associated with it cannot be viewed as compelling evidence that implementation of the law is unconstitutional." May 26 Order at 7.

Further, under the Access Regulation, organizers are not allowed to engage in "conduct disruptive of the employer's property or agricultural operations, including injury to crops or machinery or interference with the process of boarding buses." § 20900(e)(4). Thus, it seems that the Access

8

Regulation, on its face, would not allow organizers to disrupt an employer's use of his land in a significant manner.[2]

For these reasons, the Court finds that Plaintiffs have failed to allege facts that plausibly support a conclusion the Access Regulation has been or will be enforced against them in a manner that will cause a meaningful interference with their possessory interests. Accordingly, the Court GRANTS Defendants' motion to dismiss this claim. Plaintiffs will be allowed to amend their claims.

## VII. CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS the State's motion to dismiss, Doc. 11.

Plaintiffs are granted leave to amend their claims.

Plaintiffs shall file any amended complaint within 14 days of this order.

No later than 21 days after service of any amended complaint, Defendants shall file a response thereto.

Plaintiffs are cautioned that this will be the last opportunity to amend. Plaintiffs should only amend if amendment will not be futile based on the law and holding in this Order. This court does not have the resources to review and write extensive orders on how to write, rewrite and submit pleadings. This order gives the proper direction for the last time.

IT IS SO ORDERED.

Dated:   **June 29, 2016**              **/s/ Lawrence J. O'Neill**
                                        UNITED STATES CHIEF DISTRICT JUDGE

---

[2] Additionally, it is not clear that California property law treats conduct authorized by the Access Regulation as a trespass, given the California Supreme Court's finding that the rule "is not a deprivation of 'fundamental personal liberties' but a limited economic regulation of the use of real property imposed for the public welfare." *Agric. Labor Relations Bd. v. Superior Court*, 16 Cal. 3d 392, 409 (1976); *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 217 n. 21 (1994) ("The right of employers to exclude union organizers from their private property emanates from state common law . . ."); *N.L.R.B. v. Calkins*, 187 F.3d 1080, 1088 (9th Cir. 1999) ("[S]tate property law is what creates the interest entitling employers to exclude organizers in the first instance. Where state law does not create such an interest, access may not be restricted consistent with Section 8(a)(1) [of the National Labor Relations Act].").